TERRY COOPER v. THE STATE.

No. 2927. Decided January 28, 1914.

**Seduction—Conduct of Prosecutrix—Continuance—Argument of Counsel— Equitable Grounds for New Trial.**

Where, upon trial of seduction, it appeared from the record on appeal that the prosecutrix in the presence of the jury offered a strange and impassioned prayer calling on the Lord to help her, before she testified, against the remonstrations of the court and counsel; that defendant was deprived of material absent testimony because he was afraid to make an application for continuance, because the court had threatened a change of venue if he did; that the prosecuting officer indulged in argument outside of the record which was calculated to arouse the passions and prejudices of the jury, all this, though not probably legal ground for new trial, presents strong equitable grounds why the judgment of conviction should be reversed and the cause remanded, and it is so ordered; and this although the evidence would sustain the conviction.

Appeal from the District Court of Fisher. Tried below before the Hon. Jno. B. Thomas.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*C. P. Woodruff,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was prosecuted and convicted of seduction, and his punishment assessed at two years confinement in the penitentiary.

The prosecutrix by her testimony makes a plain case of seduction, and corroborated as she is by other testimony and the circumstances in the case, especially that of her sister, Mrs. Tom Smith, we would not feel authorized to disturb the judgment, on the evidence, but would and do hold that it is sufficient to sustain the verdict, and this contention is overruled. It is true that appellant testifies positively that he was never engaged to be married to the young lady; that he never at any time had sexual intercourse with her, and he also swears that he, while going with her, informed her that he was engaged to and was going to marry another lady, whom he did marry, in which latter statements he is corroborated by his sister, Mrs. Holland, and the issues of fact are strongly in conflict. But questions of fact are for the jury to determine, and where the testimony offered by the State, if true, makes a case, we should and will not disturb the verdict because of this conflict.

By a proper bill it is shown that when the young lady, Miss Townsend, was called to testify, she knelt in the presence of the jury and offered up the following prayer: Oh, dear Jesus, I do pray thee to be with me during this my hour of trial. Oh, dear Jesus, give me just the words thou would have me to say." The court did all in his power to remove the effect of this scene, recognizing, as we do, that it was highly improper. But after being cautioned, the young lady took her seat on the witness stand, and again uttered this prayer: "Dearest Jesus, I pray thee to be with me." The court as well as counsel again remonstrated, and the court again instructed the jury not to consider this incident in their deliberations.

There is another matter in the record that should perhaps be considered. It presents no legal ground for the granting of a new trial, perhaps, but the plea has in it some equities. On the morning that this case was set for trial, appellant's counsel was informed by J. E. Jay that he knew the prosecuting witness and had known her for some three or four years. At the time he formed her acquaintance he was attending college at Abilene. At the same time Lloyd Airhart and Haskell January were also attending this college, and Miss Townsend was attending the high school in Abilene. He swears on the hearing had on

the motion for a new trial that both January and Airhart had told him that they had had sexual intercourse with the prosecuting witness in this case. This was prior to the time that appellant became acquainted with her. Jay also testifies that he never did tell appellant about these facts, but that on the morning of the day the case was called for trial, he did tell the attorneys for appellant. The attorneys at once had process issued for January and Airhart. This was only about five hours before the case was called for trial, and they made no motion to postpone or continue the case, and thus what would otherwise be a legal ground for a new trial, was waived. They swear on the motion for a new trial that the reason they did not ask for postponement or continuance, was that on the day the case was called and set for trial at a future day, the trial judge then informed them they must announce ready for trial on that day, or he would on his own motion change the venue of the case and transfer it to Scurry County; that for this reason they announced ready, and hoped to get the witnesses by wire. And the fact is proven by the record that they did have the district clerk of the county wire and telephone and try to locate these witnesses and did locate Mr. January, but the case being called for trial, the district clerk withdrew the process for these witnesses without notifying appellant's counsel that he had done so until after the trial. As before stated, this does not make a legal showing for a new trial, for if appellant knew, as the record shows he did know, before announcing for trial, what he expected to prove by these witnesses, when the case was called for trial he should have made an application to postpone or continue the case, and if, because he did so apply, the court arbitrarily transferred the case to another county, properly reserved his bill to such action and brought that question to us for review. But the fact that his attorneys stated they were afraid to make this application for that reason, and they so testify on the motion for new trial, there being no denial that the court had told them he would change the venue if they made application to continue the case, and the record disclosing the efforts made to get the witnesses during the trial, and the further fact that Mr. Jay on the motion for a new trial swears the facts stated are true, present strong equitable grounds on which the trial court is always authorized to act if he deems the ends of justice will be best subserved, for the trial court, this court or the State does not desire a man who has committed no offense incarcerated in the penitentiary.

Again it is shown in a bill that the prosecuting officer in his closing speech was impassioned in his address, inclined to abuse of appellant, and went out of the record. Those portions of the speech copied in the bill are too lengthy to be herein copied, going so far at one time that the trial court felt called upon on his own motion to stop him before an exception could be urged by appellant's counsel. Attorneys should never seek a conviction by such methods. Be as ardent, be as sincere, be as eloquent as you may, but always stay within the record, and the public and this court will commend you. But seek not to arouse the passions

and prejudice of the jury by reference to matters extrinsic the record, for in a case of this kind where the testimony is so nearly evenly balanced that any honest jury would be authorized to either convict or acquit and not be subject to any criticism for so doing, these extrinsic matters should not be thrown into the scale, and thus obtain a verdict that might not have been obtained if the record had been adhered to.

The young lady and the young man, as shown by the record in this case, both stood well in the community in which they lived; their reputation for truth and veracity is shown to be excellent, and yet there is an irreconcilable conflict in their testimony in this case.  They are both corroborated in their contentions by the facts and circumstances in evidence, and while we would not invade the province of the jury and disturb this verdict because of this conflict, for the jury is alone the judge of the credibility of the witnesses, yet in a case like this, when the testimony is so evenly balanced, and it is solely the credit of the witnesses to be passed on, and they both show such enviable reputations as they each show in this case, and when the above recited extrinsic matters may have affected the judgment of the jury, and the impassioned appeal made to them as to what they would do under such circumstances, saying that when they went to meet their loved ones at home, and "your little flaxen haired girl, or the little girl with the black hair and the blue eyes comes you," etc., are made for the purpose of arousing the animosity of the jury against the character of offense here charged, we are of the opinion that the strong equitable showing made on the application for a new trial should have weight.  If the facts there stated can be shown to be true, appellant is guilty of no offense.  And as to whether it is true or not is not for us or the trial court to say, but a question to be determined by a jury.

We have read this record more than once, and under this record feel that this case should be reversed and remanded for a new trial, when all the evidence can be placed before the jury; when the prosecuting witness can be cautioned that she must not utter prayers of the kind and character here shown in the presence and hearing of the jury before she begins to testify, and when the prosecuting counsel, with this admonition, may keep within the record in his argument.  While no one of those facts may be sufficient to authorize a reversal, yet when they are all taken together, no one can tell its effect, or what influence it may have had.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*