William D. COBB, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, Respondent-Appellee.

No. 80–5488.

United States Court of Appeals, Fifth Circuit.*
Unit B

Feb. 4, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Warner S. Olds, Channing F. Brackey, Fort Lauderdale, Fla., for petitioner-appellant.

Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and THOMAS **, District Judge.

KRAVITCH, Circuit Judge:

It is ordered that the petition for rehearing filed by the petitioner is DENIED. However, because of an inadvertent error in quoting a statute, we withdraw our original opinion 656 F.2d 982 (5th Cir.), and substitute the following in its place:

Appellant William D. Cobb was convicted by a jury in Florida district court of unnecessarily killing to prevent an unlawful act in violation of Fla.Stat. § 782.11 (1975) and was sentenced to fifteen years imprisonment. After exhausting state court remedies, he petitioned the United States District Court for the Southern District of Florida for habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging that he was denied due process because Fla.Stat. § 782.11 (1975) is unconstitutionally vague and because the prosecution's evidence was insufficient to prove that the killing was unnecessary.[1] The District Court denied the appellant's petition. We affirm.

On June 19, 1976, Cobb, then a police officer, received a report that two trespassers had entered a pasture in Parkland, Florida, known to contain hallucinogenic mushrooms. Cobb drove to the pasture, accompanied by a Parkland resident, and entered it with the intention of arresting the trespassers. The resident remained in the car and was unable to see the ensuing events.

Cobb's testimony and other evidence introduced at trial[2] indicate that shortly after entering the pasture he came upon Donald Eldridge, whom he attempted to arrest. Eldridge willingly permitted Cobb to handcuff his left wrist, but before Cobb could secure the right one, Cobb was jumped from behind and knocked to the ground by the second trespasser, Roger Daugherty. After getting to his feet and while maintaining his hold of Eldridge, Cobb observed Daugherty once again approaching and pulled his revolver. When Daugherty failed to respond to an order to stop and a warning shot, Cobb fired twice at Daugherty, mortally wounding him. Eldridge and Cobb then began to scuffle, during which time Eldridge grabbed Cobb's gun. Cobb managed to wrest the gun from Eldridge's grasp and purposely shot Eldridge. The medical examiner found that bullet entered the back of Eldridge's head, followed a 35° downward path, and exited the right frontal bone, immediately killing him. The bullet also passed through a straw hat that remained on the victim's head despite the scuffle. At the

---

** Honorable Daniel H. Thomas, District Judge for the Southern District of Alabama, sitting by designation.

1. The petitioner informs this court in his Petition for Rehearing that the trial court improperly instructed the jury as to the 1974 version of Fla.Stat. § 776.05 rather than the 1975 version. Petitioner apparently did not raise this issue in the trial court and did not assert it on direct appeal or in his application for writ of habeas corpus. The issue is therefore not properly before us. *See Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978). Thus, for the purpose of this appeal, we assume, as did the district court and Florida Supreme Court,

that the trial judge properly instructed the jury as to Fla.Stat. § 776.05 (1975). If he did not, this opinion should not be read as precluding the petitioner from properly raising in state court the claim that the jury was improperly charged.

2. Other evidence presented at trial included the testimony of those who arrived on the scene after the killings, those with whom Cobb discussed the events of the day, the medical examiner who examined the victims, experts in the fields of serology and ballistics, and a number of other witnesses.

time of the shootings, Cobb was aware that both victims were unarmed. The jury found Cobb guilty of unnecessarily killing Eldridge in violation of Fla.Stat. § 782.11 (1975), but acquitted him of unnecessarily killing Daugherty.[3]

Petitioner first claims that Fla.Stat. § 782.11 (1975), Unnecessary Killing to Prevent An Unlawful Act, is unconstitutionally vague. Fla.Stat. § 782.11 (1975) provides that:

> Whoever shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter, a felony of the second degree, punishable as provided in s.775.082, s.775.083, or s.775.084.

The essence of petitioner's vagueness claim is that the phrase "unnecessarily kill" is so imprecise that an individual cannot reasonably understand the conduct prohibited by the statute.

The due process clause of the fourteenth amendment prohibits states from holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 342 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *United States v. Insco*, 496 F.2d 204, 208 (5th Cir. 1974). But due process does not require impossible standards of specificity in criminal statutes. As the Supreme Court explained in *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975), the

prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Id.* at 50, 96 S.Ct. at 244 (citations omitted).[4]

Applying this standard, we find that Fla.Stat. § 782.11 (1975) is not unconstitutionally vague. Fla.Stat. § 782.11 (1975) is a substantive provision that simply creates another form of manslaughter when any punishable homicide is committed while resisting a victim's attempt to perpetrate an unlawful act. *See Mitchell v. State*, 368 So.2d 607, 608–09 (Fla.App.1979) (Schwartz, J., concurring); *Carrizales v. State*, 345 So.2d 1113, 1115 (Fla.App.1977), *rev'd on other grounds*, 356 So.2d 274 (1978), *vacated*, 357 So.2d 447 (Fla.App.1978); *Whitehead v. State*, 245 So.2d 94, 99 (Fla.App. 1971). Under Florida law, a homicide is punishable if it is not justifiable under either Fla.Stat. § 782.02 (1975)[5] or Chapter

---

3. Following his conviction in the trial court, petitioner appealed to the District Court of Appeal in Florida, Fourth District. The appeal was transferred to the Florida Supreme Court, which upheld the conviction. *Cobb v. State*, 376 So.2d 230 (Fla.1979). Because Cobb raised the same issues in his direct appeal that he presents as grounds for federal habeas corpus relief, he has sufficiently exhausted his state judicial remedies within the meaning of 28 U.S.C. § 2254(b). *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (en banc).

4. For other Supreme Court decisions discussing the precision with which statutes must define proscribed activities, *see e.g., United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989

(1953) ("if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise"); *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947) ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not sufficient reason to hold that that statutory language is too ambiguous to define a criminal offense.")

5. Fla.Stat. § 782.02 (1975) provides that "[t]he use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be."

776 of the Florida statutes,[6] or is not excusable under Fla.Stat. § 782.03 (1975).[7] Thus, by reading Fla.Stat. § 782.11 in the context of other provisions of the Florida criminal code,[8] a reasonable person can ascertain that the phrase "unnecessarily kill" refers to any homicide not justified or excused under Florida law. We therefore agree with both the district court and Florida Supreme Court[9] that when read within its statutory framework, Fla.Stat. § 782.11 is sufficiently precise to satisfy the dictates of due process.

## II

 Petitioner also argues that he was denied due process because the evidence introduced at trial was insufficient to support his conviction. Our task in addressing such a claim on habeas review is to determine whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jack-*

*son v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Reese v. Wainwright*, 600 F.2d 1085 (5th Cir. 1979). To find petitioner guilty of unnecessary killing to prevent an unlawful act under Fla.Stat. § 782.11 (1975), the jury had to determine that the homicide was neither justifiable under Fla.Stat. §§ 782.02, 776.05, or 776.07 (1975) nor excusable under Fla.Stat. § 782.-03 (1975). A homicide is excusable under Fla.Stat. § 782.03 (1975) only if committed by "accident and misfortune" and without "any dangerous weapon being used."[10] Because petitioner testified that he purposely shot Eldridge, a rational jury certainly could have found that the killing of Eldridge was not excusable. Under the relevant justifiable homicide provisions, petitioner would have been justified in using any force which he reasonably believed necessary to defend himself, Fla.Stat. § 776.05 (1975),[11] or to prevent the escape of an arrested person from custody, Fla.Stat.

6. Chapter 776 of the Florida Statutes contains a number of provisions defining the justifiable use of force in various circumstances. Relevant for the purposes of this case are Fla.Stat. §§ 776.05, 776.06, and 776.07. Fla.Stat. § 776.-05 (1975) states that

A law enforcement officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest or when necessarily committed in retaking felons who have escaped or when necessarily committed in arresting felons fleeing from justice.

Fla.Stat. § 776.06 (1975) defines deadly force as force which is likely to cause death or great bodily harm and includes, but is not limited to:

(1) The firing of a firearm in the direction of the person to be arrested, even though no intent exists to kill or inflict great bodily harm; and

(2) The firing of a firearm at a vehicle in which the person to be arrested is riding. And, Fla.Stat. § 776.07 (1975) specifies the level of force a law enforcement officer or other person can use to prevent an escape, stating

(1) A law enforcement officer or other person who has an arrested person in his custody is justified in the use of any force which he reasonably believes to be necessary to

prevent the escape of the arrested person from custody.

(2) A guard or other law enforcement officer is justified in the use of force, including deadly force, which he reasonably believes to be necessary to prevent the escape from a penal institution of a person whom the officer reasonably believes to be lawfully detained in such institution under sentence for an offense or awaiting trial or commitment for an offense.

7. Fla.Stat. § 782.03 (1975) defines excusable homicide as a homicide

committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

8. Construing Fla.Stat. § 782.11 in this manner is consistent with established Florida law, which provides that a statutory provision must be read in the context of the entire statute. *See Cambell v. State*, 240 So.2d 298 (Fla.1970); *Carter v. State*, 155 So.2d 787 (Fla.1963).

9. *Cobb v. State*, 376 So.2d 230, 231 (Fla.1979).

10. *See* note 7 *supra*.

11. *See* note 6 *supra*.

§ 776.07 (1975),[12] and would have been justified in employing deadly force to resist an attempt to take his life or to commit a felony upon his person, Fla.Stat. § 782.02 (1975).[13] After carefully reviewing the record, we find that a rational jury could have found beyond a reasonable doubt that the use of deadly force was unjustified under the circumstances. The only witness to the killing was the petitioner. He testified that he deliberately shot Eldridge during a struggle with the victim. However, the pathologist's findings indicated that the victim was shot in the back of the head and that the bullet followed a 35° downward path, exiting his right frontal bone. The evidence also demonstrated that holes in Eldridge's hat correlated to the deceased's head wounds, revealing that the hat remained on Eldridge's head despite the alleged struggle. Moreover, the petitioner's testimony established that he was aware that the victim was unarmed. The jury has the sole responsibility to judge the weight and credibility of the evidence, and in light of all the evidence could have rationally decided beyond a reasonable doubt that the killing of Eldridge was unjustified. Thus, we agree with the district court that a rational jury could have found beyond a reasonable doubt that petitioner unnecessarily killed Eldridge in violation of Fla. Stat. § 782.11 (1975). AFFIRMED.

12. *See* note 6 *supra.*

13. *See* note 5 *supra.*