Jackie Vance LOWERY,
Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director Texas
Department of Corrections,
Respondent-Appellee.

No. 81–1198.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

Vinson & Elkins, Jeffrey W. Steidley, Houston, Tex. (Court-appointed), for petitioner-appellant.

Charles A. Palmer, Joe Foy, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN and JOHNSON, Circuit Judges, and DUPLANTIER,* District Judge.

JOHNSON, Circuit Judge:

Jackie Vance Lowery stands convicted of robbery by firearms. The district court found no violation of double jeopardy, due process, or the sixth amendment in his conviction, and denied his request for habeas corpus relief. We affirm.

### I.

On an October afternoon in 1970, two men brandishing guns strode into the business office of the City Service vending machine firm as the owner and an employee counted up the day's receipts. The thieves terrorized the businessmen, forcing them at gunpoint to lie face down on the floor in a back room. One stood guard with a .357 magnum; the other began to gather the bags of change. But before the scene was played out, a machine serviceman returned to the office from his rounds. The thief carrying a .357 magnum felled him as he entered. The serviceman, Morris Patterson, died a half hour later.

Separate indictments charged Jackie Vance Lowery with committing murder with malice and robbery by firearms in the City Service holdup. The murder case was tried first. Lowery was convicted and sentenced to death. While Lowery's appeal of the murder conviction was pending, the robbery charge came to trial. For reasons undisclosed in the record on appeal, the State moved at arraignment to strike the indictment's allegation that the robbery was committed "by using and exhibiting a firearm, to wit: a gun." The motion was granted; under Texas law, its effect was to reduce the charge to the lesser included offense of robbery by assault. *Cross v. State,* 474 S.W.2d 216 (Tex.Cr.App.1971); *Ex Parte Merritt,* 262 S.W.2d 725 (Tex.Cr. App.1953). The case was tried on the redacted indictment. Over Lowery's plea of not guilty, the jury returned a conviction and assessed punishment at a term of not less than five and not more than five hundred years.

A few months later, the Texas Court of Criminal Appeals reversed Lowery's conviction of murder with malice for its reliance on evidence seized in violation of the fourth amendment. *Lowery v. State,* 499 S.W.2d 160 (Tex.Cr.App.1973). The trial court subsequently granted Lowery's motion for a new trial on the robbery charge.[1] A consolidated retrial proceeded on the original indictments, but with an important difference: at some time prior to retrial, in a manner undisclosed in the record on appeal, the State revived the robbery indictment's allegation of use of a firearm. Lowery was again convicted, but this time of murder with malice and robbery by firearm.[2] He

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

1. Texas procedural rules prohibit the trial court's comment on the evidence in ruling on motions for new trials, Vernon's Ann.C.C.P. art. 40.07 (1979). It appears, however, that the grant of the motion was related to the reversal of the murder conviction: the .357 magnum, the sawed-off shotgun and the bags of coins illegally seized and improperly admitted in the murder trial were also placed in evidence in the robbery trial.

2. An apparent failure to correct the indictment for the State's reinsertion of the allegation of use of a firearm left the record of Lowery's second conviction in some confusion. The formal record of verdict of conviction and sentence denominates the charge as "robbery by assault," as does the report of the Texas Court of Criminal Appeal's unpublished per curiam affirmance. *Lowery v. State,* 533 S.W.2d 358 (Tex.Cr.App.1976). The jury was, however, charged on the elements of robbery with firearms and the sentence authorized for that offense. The sentence imposed is consistent only with conviction of robbery with firearms.

was sentenced to terms of ninety-nine years for each offense.

Several applications for post-conviction relief followed.[3] The one now before us presented four claims in identical, sequential petitions to the state courts and the federal district court. Lowery charged, first, that the striking of the aggravation element prior to his first trial operated as a functional acquittal of the greater offense, rendering his subsequent trial on the unexpurgated indictment violative of the double jeopardy clause. He argued that certain reputation evidence admitted at the punishment phase of his trial and the prosecutor's argument of that evidence were so prejudicial as to make the proceeding fundamentally unfair. And finally, he claimed ineffective assistance of counsel at trial and on appeal. Although the state courts summarily rejected the claims as "totally without merit," the matter took a slightly different turn in the federal district court. The magistrate to whom Lowery's petition was referred, like the state courts before him, found no basis for relief in the claims presented. He suggested, however, that two potentially substantial deficiencies had escaped Lowery's attention. The magistrate noted that Lowery had not challenged the validity of the State's revivification of the portion of the robbery indictment charging use of a firearm; he also noted that retrial on the greater offense after vacation of the conviction on the lesser

raised the spectre of vindictive prosecution. But having raised the problems, he dispelled them: the first he found to be purely a problem of state law, and the second chimerical, as the sentence returned on the second conviction was less severe than that initially imposed. The district court adopted the magistrate's resolution and denied relief.[4]

Lowery's appeal reasserts the four issues presented to the state and federal district court, and expands on the arguments first identified by the federal magistrate. We conclude that the latter are not properly before us and affirm denial of relief on the former.

## II.

Lowery vigorously argues that the due process clause was twice violated in his retrial on the charge of robbery with firearms. He claims, first, that the striking of the firearm allegation irreversibly stripped the convicting court of jurisdiction over the greater offense under the original indictment. He also charges that the State's return to the greater charge on retrial impermissibly upped the ante after his effective exercise of his right to appeal. Two firm principles prevent our immediate resolution of these claims: as the State points out, Lowery argues both for the first time in this appeal, and has exhausted state remedies on neither.[5]

The state of the formal verdicts is probably attributable to the fact that the verdict was expressed, as the court instructed, as "guilty as charged in the indictment." The Texas Court of Criminal Appeals seems to have thought this to be the case: its memorandum opinion in fact identifies the conviction as of "robbery with firearms," *Lowery v. State*, 533 S.W.2d 358 (Tex.Cr.App.1976), and a notation in the appellate record states that "judgment and sentence need to be reformed to show [the defendant] convicted of robbery with firearms not robbery by assault." We are not told whether the record has been so reformed. We do know that in all subsequent proceedings for post-conviction relief, Lowery, the State and the Texas courts have all treated the conviction as one for robbery with firearms.

3. Lowery has filed three applications for post-conviction relief in the Texas courts. This is

the first to be followed by proceedings in federal habeas corpus.

4. In his response to the magistrate's report Lowery expressly disavowed reliance on a charge of prosecutorial vindictiveness. He did not address at all the question of the validity of the indictment.

5. Acceptance of the State's nonexhaustion argument, also raised for the first time in this appeal, is in these circumstances not contrary to our established rule of refusal to consider late claims of failure to exhaust, see *Messelt v. State of Alabama*, 595 F.2d 247, 250–51 (5th Cir.1979). Lowery's failure to exhaust the jurisdictional and prosecutorial vindictiveness claims simply was not in issue prior to his presentation of them in this Court, *ante* at note 4; the nonexhaustion argument is therefore not belatedly raised, *compare Messelt* at 251 n. 7.

A bedrock of good sense and keen appreciation for the capabilities of other forums underlies what sometimes appears to be a Byzantine maze of procedures governing collateral attacks on state criminal convictions. Recent Supreme Court decisions have emphasized the requisites to federal appellate consideration of state-confined habeas corpus petitioners' pleas. *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) admonished that even a per se violation of a criminal defendant's constitutional rights, appearing clearly in the record, does not justify initial consideration of the unexhausted claim in the Court of Appeals, *compare Stuckey v. Stynchcombe,* 614 F.2d 75, 77 (5th Cir.1980) *and Tifford v. Wainwright,* 592 F.2d 233, 234 (5th Cir.1979) *with Cobb v. Wainwright,* 666 F.2d 966, 968 n. 1 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). *Cf. Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (requiring complete exhaustion of all claims presented in a state prisoner's proceeding for habeas corpus prior to a federal district court's consideration of the petition). *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982), addressing a related principle in a different context, admonished appellate courts to refrain in all but the clearest of circumstances from initial, independent fact-finding. Lowery's allegations bring some of the reasons for these principles of appellate procedure into sharp focus.

An absence of jurisdiction in the convicting court is, as Lowery claims, a basis for federal habeas corpus relief cognizable under the due process clause. *Branch v. Estelle,* 631 F.2d 1229, 1233 (5th Cir.1980); *Bueno v. Beto,* 458 F.2d 457, 459 (5th Cir.), *cert. denied,* 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1982); *Murphy v. Beto,* 416 F.2d 98, 100 (5th Cir.1969). But, as Lowery acknowledges, the predicate conclusion of

no jurisdiction derives wholly from state law controlling the validity of Texas indictments. Texas courts have held that the dismissal of an indictment conclusively ousts the trial court of jurisdiction. *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Cr.App. 1980); *Ex Parte Minus,* 118 Tex.Cr.R. 170, 37 S.W.2d 1040 (1931). A subsequent order purporting either to reinstate the cause or enter judgment thereon is void *ab initio, Garcia* at 528; *Ex Parte Kirby,* 626 S.W.2d 533, 534 (Tex.Cr.App.1981). The defect cannot be waived, but can be raised at any point in direct or post-conviction proceedings, *Kirby* at 534; *Ex Parte Cannon,* 546 S.W.2d 266, 267 (Tex.Cr.App.1976); *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Lowery argues that the striking of the indictment's allegation of use of a firearm is tantamount to dismissal of the greater offense, *see Bradley v. State,* 456 S.W.2d 923, 925 n. 1 (Tex. Cr.App.1970), and argues from the settled principles governing dismissal of whole indictments that a conviction entered on a charge including a reinstated element of aggravation is void, *compare Ex Parte Traxler,* 147 Tex.Cr.R. 661, 184 S.W.2d 286 (1944) (according jurisdictional effect to dismissal of portion of indictment charging the felony to be a capital offense). Lowery cites, and our research has unearthed, no Texas precedent directly addressing his argument.[6]

The exhaustion requirement, in its most fundamental aspect embodying respect for the coordinate capabilities of state courts to enforce federal constitutional directives in state criminal justice proceedings, *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), takes on special significance where constitutional claims are enmeshed with state law. *Bueno* at 459; *Murphy* at 100. Lowery's claim of a constitutional defect in the convicting court's jurisdiction appears at this juncture to turn

---

**6.** At oral argument, the State argued that *Whitehead v. State,* 162 Tex.Cr.R. 507, 286 S.W.2d 947 (1956) establishes that under Texas procedures the grant of a new trial reinstates the indictment as originally drawn. But *Whitehead's* endorsement of retrial on the "original

indictment," *id.* 286 S.W.2d at 948, was not made in consideration of a return to a charge previously stricken. It states merely that retrial on the charge originally tried or on different charges returned in a separate indictment does not violate the double jeopardy clause.

solely on a technical question of Texas procedural law. Enforcement of the exhaustion requirement relinquishes the claim in both its constitutional and state law dimensions in the first instance to the province of the Texas courts.

A somewhat different problem plagues Lowery's vindictive prosecution allegation: events extraneous to Lowery's criminal prosecutions destroyed the neat subsidiary-principal relationship between the charges brought in the first and second proceedings, and injected a debate over approximate equivalencies and their relevancy. After Lowery's first trial but before the second, a new Texas penal code became effective.[7] The new code supplanted the existing offenses of robbery by assault and robbery with firearms[8] with substantially redefined offenses of robbery[9] and aggravated robbery[10], and significantly modified the authorized penalties. Robbery with firearms, earlier punishable by death or any term not less than five years,[11] became a form of aggravated robbery punishable by life imprisonment or any term from five to ninety-nine years.[12] The penalty for ordinary robbery decreased from life or any term not less than five years[13] to a term from two to twenty years, or a fine.[14] The State argues that because the new penalties for aggravated robbery are in part equivalent to and in part less severe than those formerly available for robbery by assault, it could not be guilty of vindictiveness in pursuing the greater offense in Lowery's second prosecu-

7. Acts 1973, 63rd Leg., Ch. 399, § 6(c) provides that:

> (c) In a criminal action pending on or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins.

The course of proceedings indicates that such an election was made: at the punishment phase of the trial, counsel argued and the jury was instructed on the range of punishments available under the new code. There is, however, no record of Lowery's election of his right to proceed under the new code.

8. The former code provided:

> If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death or by confinement in the penitentiary for any term not less than five years.

V.T.C.A., Penal Code art. 1408.

9. V.T.C.A., Penal Code § 29.02 states:

*Robbery*

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or

> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

(b) An offense under this section is a felony of the second degree.

10. V.T.C.A., Penal Code § 29.03 states:

*Aggravated Robbery*

(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:

> (1) causes serious bodily injury to another; or

> (2) uses or exhibits a deadly weapon.

(b) An offense under this section is a felony of the first degree.

11. *See ante* note 8.

12. V.T.C.A., Penal Code, § 12.32 provides:

*First-Degree Felony Punishment*

> An individual adjudged guilty of a felony of the first degree shall be punished by confinement in the Texas Department of Corrections for life or for any term of not more than 99 years or less than 5 years.

13. *See ante* note 8.

14. V.T.C.A., Penal Code § 12.33 provides:

*Second-Degree Felony Punishment*

(a) An individual adjudged guilty of a felony of the second degree shall be punished by confinement in the Texas Department of Corrections for any term of not more than 20 years or less than 2 years.

(b) In addition to imprisonment, an individual adjudged guilty of a felony of the second degree may be punished by a fine not to exceed $10,000.

tion.[15] Lowery claims that he was wrongly denied the legislatively-granted right to a less severe sentence.

Neither side of the argument is adequately developed. The prosecutor's reason for reprosecution on the greater offense is not on record.[16] Neither have the parties attempted to compare attendant consequences, such as eligibility for parole, *Blackledge,* 94 S.Ct. at 2103 n. 6; *Miracle* at 1275; *Hardwick* at 300. Most importantly, consideration of whether the possibility of a harsher sentence is invariably the *sine qua non* of prosecutorial vindictiveness, *see Hardwick* at 299–300, or whether vindictiveness may be found in deprivation of the benefit of legislation reducing the penalty for the offense first tried, is premature. It is at least possible that the Texas courts would consider this claim barred by Lowery's failure to raise it in a pre-trial attack on the indictment, *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr.App.1980); *cf. United States v. Johnson,* 679 F.2d 54, 57 (5th Cir. 1982); *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state court is the proper forum for consideration of the procedural question, for exploration of the events leading to Lowery's reprosecution for robbery with firearms, and for examination, as an initial matter, of the intricate problems of an interim redefinition of a crime and its punishments. *Klobuchir v. Commonwealth of Pennsylvania,* 639 F.2d 966, 970–71 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981).

We accordingly leave these matters to other proceedings and turn to the claims fully litigated in the state and district courts.[17]

**15.** The State also suggests that it is absolved of all taint of vindictive reprosecution by virtue of the lower sentence actually imposed by the jury on retrial. The argument misperceives the distinction between vindictive resentencing, *see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), and vindictive reprosecution in retaliation for exercise of a protected right, *see post* note 16. The issue in the latter situation is whether the prosecutor's actions, viewed prospectively, create a reasonable apprehension of retaliation for exercise of the protected right. *Miracle v. Estelle,* 592 F.2d 1269, 1275 (5th Cir.1979); *Hardwick v. Doolittle,* 558 F.2d 292, 300 (5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978). That such an apprehension in the end proves unjustified because of events beyond the prosecutor's control, *compare Jackson v. Walker,* 585 F.2d 139, 147 (5th Cir.1978), does not alleviate the damage done to the free exercise of the protected right. *Miracle* at 1275; *United States v. Jamison,* 505 F.2d 407, 415 (D.C.Cir.1974).

**16.** In *Miracle,* this Court considered a defendant's free exercise of his right to a new trial, like a right to appeal, to be protected from constraining fears of retaliation, *id.* at 1272, 1276–77; *compare Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Jackson* at 148–49; *Hardwick* at 302–03 *with United States v. Goodwin,* —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *Ehl v. Estelle,* 656 F.2d 166 (5th Cir.1981), *cert. denied,* 455 U.S. 953, 102 S.Ct. 1459, 71 L.Ed.2d 669 (1982); *compare United States v. Ruppel,* 666 F.2d 261 (5th Cir.), *cert. denied,* —— U.S. ——,

102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982) *with Jamison* at 416–17. Where the exercise of a protected right is followed by reprosecution on a more serious variant of the charge first tried, a presumption of vindictiveness arises, *Goodwin* 102 S.Ct. at 2490 n. 8; *Blackledge* 94 S.Ct. at 2103 n. 7; *Miracle* at 1277. The presumption may be dispelled by objective evidence justifying the prosecutor's action. *Id.* But the State's post hoc justification for reprosecution on the greater charges is no substitute for an on-the-record examination of the prosecutor's actual reasons. *United States v. Andrews,* 633 F.2d 449, 456 (6th Cir.1980) (*en banc*).

**17.** The total exhaustion rule announced in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) does not require dismissal of the remainder of Lowery's claims. *Rose* held that federal district courts may not entertain "mixed" habeas corpus petitions, *i.e.,* petitions presenting both exhausted and unexhausted claims. The thorny question of the timing of *Rose's* application was resolved in the same season. *Engle v. Isaac,* 456 U.S. 107, 123, 102 S.Ct. 1558, 1563, 71 L.Ed.2d 783 (1982) trimmed the proscription against hybrid petitions to exclude those taking on that hue by injections of unexhausted claims which "formed no part of [the] habeas petition." The sensible and equitable result is that refusal to consider the unexhausted claim first identified by the magistrate and first pressed by Lowery on appeal does not require that we deny Lowery review of the claims argued through every stage of the prior state and federal proceedings. *Robinson v. Wade,* 686 F.2d 298, 304 n. 12 (5th Cir.1982); *accord Sales v. Harris,* 675 F.2d 532,

## III.

◼ Lowery argues that the double jeopardy clause was violated by his prosecution for robbery with firearms after his conviction for robbery by assault was set aside.[18] We are not concerned with retrial on a charge dismissed by the State after prosecution had begun, *compare Wilson v. Meyer,* 665 F.2d 118 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982); *Midgett v. McClelland,* 547 F.2d 1194 (4th Cir.1977); the indictment's allegation of use of a firearm was stricken prior to the empanelment and swearing of the first jury, *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).[19] Rather, the question is whether the double jeopardy clause prohibits trial on an offense not put in issue in the first proceeding, once the original conviction on a lesser variant has been set aside.[20] We conclude that it does not.[21]

◼ *United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) established the venerable, general rule that there is no double jeopardy bar to retrying a defendant who has succeeded in overturning his conviction. The slate has been "wiped clean," *North Carolina v. Pearce,* 89 S.Ct. at 2078. Reprosecution can proceed on the same or a different statutory violation, regardless of whether that statutory violation is considered to be the same or a separate offense, *Hardwick* at 279–98; *Wilson* at 125. The major exception to this rule is for acquittals.[22] If the fact-finder or an appellate court decides that the prosecution has not proved its case, either in entirety, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), or in part, *Green,* 98 S.Ct. at 225, the defendant is

---

540 n. 6 & text (2d Cir.1982); *Butler v. Rose,* 686 F.2d 1163, 1167 (6th Cir.1982); *Powell v. Spalding,* 679 F.2d 163, 165–66 (9th Cir.1982); *Cosby v. Jones,* 682 F.2d 1373, 1377–78 (11th Cir.1972).

**18.** This claim and the claims discussed in following sections were thoroughly exhausted in the Texas courts, *ante* at note 4; *Daniels v. Maggio,* 669 F.2d 1075, 1076 (5th Cir.1982).

**19.** Lowery suggests that the unexpurgated indictment may have been read to the jury. Only his bare assertion supports this claim. The docket sheet clearly shows that the State's motion to strike was made and granted at the arraignment, prior to acceptance of Lowery's plea. Record at 55. Lowery has offered no evidence whatsoever indicating that the trial court erroneously submitted the case on the indictment as originally phrased. We have no reason to question the district court's finding that the charge was reduced before jeopardy attached.

**20.** This issue was raised but not reached in *Blackledge,* 94 S.Ct. at 2101 and in *Jamison,* at 410, 414 n. 10. Both cases were resolved instead by findings of prosecutorial vindictiveness violative of the due process clause.

**21.** A number of circuits have considered this question in the context of plea bargaining. All have concluded that the double jeopardy clause does not prevent prosecution on the greater offense after a conviction entered on a guilty plea to the lesser included offense is set aside. *Klobuchir* at 968–70; *United States v. Johnson,* 537 F.2d 1170 (4th Cir.1976); *Hawk v. Berkem-*

er, 610 F.2d 445 (6th Cir.1979) *overruling Rivers v. Lucas,* 477 F.2d 199 (6th Cir.), *vacated and remanded on other grounds,* 414 U.S. 896, 94 S.Ct. 232, 38 L.Ed.2d 139 (1973) *and Mullreed v. Kropp,* 425 F.2d 1095 (6th Cir.1970); *United States v. Anderson,* 514 F.2d 583 (7th Cir.1975); *United States v. Williams,* 534 F.2d 119 (8th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Barker,* 681 F.2d 589 (9th Cir.1982); *Ward v. Page,* 424 F.2d 491 (10th Cir.), *cert. denied,* 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed.2d 157 (1970); *accord Moore v. Foti,* 546 F.2d 67 (5th Cir. 1977); *Harrington v. United States,* 444 F.2d 1190 (5th Cir.1971); *cf. United States ex rel. Williams v. McMann,* 436 F.2d 103 (2d Cir. 1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971) (*North Carolina v. Pearce* inapposite); *see United States v. Myles,* 430 F.Supp. 98 (D.D.C.), *affirmed,* 569 F.2d 161 (D.C.Cir.1978); *see also Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (indicating that should a guilty plea on a lesser charge be withdrawn, "the petitioner will, of course, plead anew to the original charge on the two felony counts."); *but see post* note 23.

**22.** Reprosecution might also be precluded where the conviction is set aside for deliberate prosecutorial overreaching intended to provoke a motion for mistrial, *see Robinson v. Wade,* 686 F.2d 298 at 306–308 (5th Cir.1982), discussing *Oregon v. Kennedy,* —— U.S. ——, 102 S.Ct. 2083, 2090, 2095–96 n. 22, 72 L.Ed.2d 416 (1982).

protected from reprosecution to the extent of that acquittal. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981).

The Supreme Court has defined acquittal as " 'the ruling of a judge, whatever its label, [which] actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' *Martin Linen [United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642], 430 U.S. at 571, 97 S.Ct. at 1355,". *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978). *Green* and *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) recognized the partial acquittal implicit in a jury's return of a guilty verdict on a lesser included offense following trial on the greater charge. But the necessary predicate to a finding of acquittal, whether express or implied, is a determination that the fact-finder had a full opportunity to return a verdict on the charge the defendant claims precluded, and rejected it. *Green,* 78 S.Ct. at 225; *Price,* 90 S.Ct. at 1761. No trier of fact has refused to convict Lowery of robbery with firearms. The charge of use of a firearm was withdrawn before the first jury was empaneled. That jury was not asked to consider whether Lowery used a gun in the commission of the Cities Service holdup.

Its return of a guilty verdict on the greatest offense available to it said nothing about Lowery's culpability for the still greater offense originally charged but not placed before it. Neither can the trial court's striking of the allegation of use of a firearm be viewed as an acquittal of that charge. Lowery has produced no evidence whatsoever that the convicting court struck that section of the indictment because it believed the charge to be without factual basis.[23] He has not shown that the striking was either necessarily, under Texas criminal procedures, *compare Hawk* at 447 n. 2,[24] or in fact premised on a determination of the merits of the allegation stricken. *Cf. Gully v. Kunzman,* 592 F.2d 283, 289 (6th Cir.), *cert. denied,* 442 U.S. 924, 99 S.Ct 2850, 61 L.Ed.2d 292 (1979) (double jeopardy no bar to imposition of death sentence on second conviction for willful murder and armed robbery where life sentence only was sought and imposed following first conviction for same offenses). No factual preclusion on the charge of use of a firearm arose from the first determination of guilt on the lesser charge of robbery by assault. No issues of fact were necessarily determined in Lowery's favor in the first trial. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 1193–94, 25 L.Ed.2d 469 (1970). The charge simply was not in issue in the first proceeding.[25]

**23.** At the very moment the allegation was stricken, Lowery was under sentence for murdering Morris Patterson during the Cities Service robbery by shooting him with a gun.

**24.** *Parker v. State,* 626 S.W.2d 738 (Tex.Cr. App.1981) is not to the contrary. *Parker,* decided by the Texas Court of Criminal Appeals after Lowery's petition was denied, held that the former jeopardy provisions of the Texas Code of Criminal Procedure, Vernon's Ann.C. C.P. art. 37.14, deems an adjudication of guilt on the lesser offense of robbery, in that case through acceptance of a guilty plea, to operate as an acquittal for the higher grade of offense, aggravated robbery. The decision did not rest on a determination that the trial court either actually or necessarily determined the defendant's innocence of the greater charge prior to accepting his plea.

**25.** Parallel analysis obtains in the analogous area of double jeopardy constraints on resentencing following reconviction.

> The imposition of a particular sentence usually is not regarded as an "acquittal" of any more severe sentence that could have been imposed. The Court generally has concluded, therefore, that the Double Jeopardy Clause imposes no absolute prohibition against the imposition of a harsher sentence at retrial after a defendant has succeeded in having his original conviction set aside. See *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). See also *United States v. DiFrancesco,* 449 U.S. at [133–138], 101 S.Ct. [426] at 435–438 [66 L.Ed.2d 328]; *Chaffin v. Stynchcombe,* 412 U.S. 17, 23–24, 93 S.Ct. 1977, 1981–1982, 36 L.Ed.2d 714 (1973); *Stroud v. United States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919).
> *Bullington,* 101 S.Ct. at 1857. But where the sentencing proceeding at the first trial was itself a trial on the issue of punishment, requir-

Nor do we believe that the prosecution lost its power to prosecute the greater offense by requesting its dismissal prior to the trial of the first case. The double jeopardy clause does not require the state to join in a single criminal proceeding all charges arising from one criminal episode, *compare Ashe* 90 S.Ct. at 1193–95 *with id.* at 1197–1202 (Brennan, J. concurring). Had it stood, Lowery's initial conviction for robbery by assault would have precluded subsequent proceedings on the greater charge of robbery with firearms, *see Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 2226–27 & n. 7, 53 L.Ed.2d 187 (1977). But his decision to seek a new trial was "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined by the first trier of fact," *Scott,* 98 S.Ct. at 2195, and to yield the preclusive effects of an unchallenged conviction, *id.,* 98 S.Ct. at 2192–94; *Ball,* 16 S.Ct. at 1195. We can perceive no constraints imposed by the double jeopardy clause on the scope of the subsequent prosecution after a defendant, once convicted of all that was charged, voluntarily[26] and successfully challenges that first conviction on grounds other than insufficiency of the evidence, *Burks,* 98 S.Ct. at 2149–50. *Accord, Klobuchir* at 970; *Hawk* at 447–48.

## IV.

The remainder of Lowery's claims are considerably less complicated.[27] He charges that his trial was rendered fundamentally unfair by the admission of reputation evidence at the punishment phase of his trial, and by two arguments made by the prosecution in closing in the punishment stage. He also claims that by failing to object to the challenged evidence and arguments,[28] and in failing to raise his double jeopardy argument, his attorney rendered ineffective assistance of counsel at trial and on appeal. We find no merit in these claims.

■ The admission of prejudicial evidence and improper argument justify federal habeas corpus relief only if, in the context of the entire trial, the errors contributed as "crucial, critical, highly significant factors," *Washington v. Estelle,* 648 F.2d 276, 279 (5th Cir.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981); *Blankenship v. Estelle,* 545 F.2d 510 (5th Cir.1977), *cert. denied,* 444 U.S. 856, 100 S.Ct. 115, 62 L.Ed.2d 75 (1979). But the predicate to such an inquiry is, of course, a determination that error occurred. Lowery has failed to show that the admission of the reputation evidence and the prosecutor's argument thereof were error. The challenged reputation evidence is the testimony of a veteran law enforcement officer during the punishment phase that Lowery had a bad reputation in the community for being a peaceful and law abiding citizen.[29] Lowery complains that it should not have been admitted because he had not put his reputa-

ing the State's proof of certain facts beyond a reasonable doubt before the harsher penalty could be imposed, the return of a lesser penalty at that trial is considered an acquittal of the more severe punishment, and the double jeopardy clause bars subsequent attempts to secure it. *Id.,* 101 S.Ct. at 1862; *accord Gully* at 289; *Jamison* at 414 n. 10.

**26.** *See ante* note 21.

**27.** They are also fully exhausted, *see ante* note 17.

**28.** The State suggests that federal habeas corpus review of these claims is barred by Lowery's repeated failure to comply with the Texas contemporaneous objection rule, *see Sykes,* 97 S.Ct. at 2506. But *Sykes* does not preclude federal review of a petitioner's constitutional claims if the state courts have adjudicated the claims on the merits, *Thompson v. Estelle,* 642 F.2d 996, 998 (5th Cir.1981). The state trial court rested its denial of Lowery's petition for state post-conviction relief on its determination that his several claims were "totally without merit." Its decision not to rely on his procedural default frees us to examine the merits of his claims. *Id.*

**29.** Lowery identified the following exchange as the offending testimony:

Q: Do you know the general reputation of Jackie Vance Lowery in the community in which he resides for being peaceful and law abiding?

A: Yes, I do.

Q: And tell the jury is that reputation good or is it bad?

A: It's bad.

tion in issue. But, as the magistrate concluded,

> The Petitioner apparently misperceives the purpose for such testimony. Unquestionably had it been presented during the guilt-innocent portion of the Petitioner's trial, without the Petitioner having first placed his reputation at issue, the admission of such testimony would have been erroneous. However, in the punishment phase of the trial the jury may consider any evidence which is relevant to the appropriate sentence to be assessed, including the accused's general reputation. Thus no error occurred.

*Lowery v. Estelle,* No. CA–81–187–H, mem. op. at 5 (N.D.Tex. April 2, 1981); Vernon's Ann.C.C.P. art. 37.07(3)(c); *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Henry v. State,* 567 S.W.2d 7 (Tex.Cr.App. 1978). Lowery also claims that the evidence was inadmissible because the officer's knowledge of his reputation was derived solely from investigation into the offense at trial. *See Wright v. State,* 491 S.W.2d 936 (Tex.Cr.App.1973). Nothing in the record supports this charge. Finally, Lowery charges that the prosecutor's reference to this reputation evidence in his closing argument at the punishment phase compounded its prejudicial effect.[30] We disagree. The statement was merely a summarization of properly admitted evidence, *Woodkins v. State,* 542 S.W.2d 855, 859 (Tex.Cr.App. 1976), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2688, 53 L.Ed.2d 279 (1977).

■ Lowery's challenge to another portion of the prosecutor's punishment phase argument has more basis. He contends that the prosecutor's argument that

You know the evidence that he's dangerous, he will kill you if he had to or if he wants to, and that he will grin about it. You know that. That's the evidence. So you base your verdict on the evidence that you have.

was nothing other than an intentional vilification calculated solely to inflame the passion of the jury, *see Baldwin v. State,* 499 S.W.2d 7 (Tex.Cr.App.1973); *Cooper v. State,* 72 Tex.Cr.R. 645, 163 S.W. 424 (1914). We agree that the argument was not altogether suited to the circumstances, but do not believe that it was in this case so prejudicial as to violate the constitutional principles of fundamental fairness of the trial as a whole. The trial record discloses that two eyewitnesses positively identified Lowery as the man who, in the course of an armed robbery, coolly and deliberately murdered an innocent bystander. The medical examiner testified that the fatal shot was fired no more than a half inch from Morris Patterson's back. Extensive evidence of Lowery's prior criminal record and his bad reputation was put before the jury. In context, this punishment phase argument was not so egregious as to undermine the fairness of the entire proceeding, *Washington* at 279; *Houston v. Estelle,* 569 F.2d 372, 382 (5th Cir.1978). It does not warrant federal habeas corpus relief.

■ Finally, Lowery argues that his attorney's failure to raise his double jeopardy, reputation evidence, and improper argument claims at trial and on appeal violated his right to effective assistance of counsel. The short answer is that, as the arguments are without merit, Lowery has failed to demonstrate that he was prejudiced by their omission. *Washington* at 279; *Nelson v. Estelle,* 642 F.2d 903 (5th Cir.1981); *Ful-*

---

**30.** Lowery complains of the following argument:

> What else do you have? Well, you have got the testimony of an intelligence officer, a sergeant, Dallas Police Officer for some 26 or seven years, a long time, and then retired, but he is dedicated enough that he took his retirement and now he is working for the County in the Sheriff's Department in Intelligence, and he knows the reputation of Jackie Vance Lowery in the community in which he resides. And what is that reputation? Is it

> good or is it bad? It's bad, and no questions. You can think about those things. You have got his reputation, what he enjoys as a reputation, what other people think of him, and they think bad things of him, other people, and no questions.
>
> You have got his reputation. You have got his criminal record and you have got the testimony in this case that you heard yesterday or deliberated on yesterday, that's what you based your verdict on.

*ford v. Blackburn,* 593 F.2d 17 (5th Cir. 1979).

### V.

We have concluded that Lowery's indictment-based due process arguments are not at this time properly before us, and we have declined to reach their merits. We have considered his claims that the second prosecution placed him in double jeopardy, and that the prosecution was tainted by inadmissible evidence, improper jury arguments and ineffective assistance of counsel, and have found them to provide no basis for relief. The district court's denial of the writ of habeas corpus is affirmed.

AFFIRMED.

DUPLANTIER, District Judge, specially concurring:

I concur in the result. However, I would decline to consider the claimed due process violations discussed in Part II of the opinion on the fundamental ground that they are not raised in the petition and are argued by petitioner for the first time on appeal. *See Robinson v. Wade,* 686 F.2d 298 (5th Cir. 1982); *Gray v. Lucas,* 677 F.2d 1086 (5th Cir.1982); *United States v. Scott,* 672 F.2d 454, 455 (5th Cir.1982). The district judge's opinion discusses neither ground. The magistrate, after identifying four issues as being the only ones asserted by the petitioner, for some reason mentions the two due process matters but states specifically that they are not raised by petitioner. Neither a magistrate nor a court should wander through a state criminal trial record in search of some error not raised by the petitioner.

In my view, since the claims are not presented by the habeas corpus petition, there is no issue of failure to exhaust these claims in the state court. However, I respectfully record my disagreement that there is in this circuit an "established rule of refusal to consider late claims of failure

to exhaust." *See ante,* at 2126, n. 5. While exhaustion may not be a jurisdictional prerequisite, the failure to exhaust should be an issue which can be raised at any time, even by the court *sua sponte.* I could find no Fifth Circuit authority (but some *dicta*) to the contrary.[1] While the Supreme Court has not spoken on the precise issue, the principles of comity and federalism instruct that it is "'unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379, 387 (1982). When a federal court compels a state prisoner to present his federal constitutional claims to a state court before seeking relief from a federal court, this "furthers the purpose underlying the habeas statute." *Id.* at 510, 102 S.Ct. at 1199, 71 L.Ed.2d at 382. It is an action "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Id.* at 518, 102 S.Ct. at 1203, 71 L.Ed.2d at 387.

---

1. In a case of first instance in this circuit, *Felder v. Estelle,* 693 F.2d 549 at 550 (5th Cir.1982), the court decided that "the state may explicitly waive the exhaustion requirement in federal habeas corpus proceedings under 28 U.S.C. § 2254." That is of course a different issue.