Clarence Eugene WILSON,
Petitioner-Appellant,

v.

Leo J. MEYER, Warden,
Respondent-Appellee.

No. 80–2194.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1981.

Decided Nov. 16, 1981.

Certiorari Denied March 1, 1982.
See 102 S.Ct. 1621.

Robert K. Mayer, Chicago, Ill., for petitioner-appellant.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before PELL, Circuit Judge, MARKEY,* Chief Judge, and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner Clarence Wilson appeals from a denial of his habeas corpus petition under 28 U.S.C. § 2254. Before us is one issue relating to Wilson's Fifth Amendment right of freedom from double jeopardy: whether the *nolle prosequi* of the felony murder count subsequent to Wilson's conviction but

* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

prior to sentencing barred Illinois from re-prosecution of Wilson for felony murder. We conclude that Illinois' actions to reprosecute Wilson violated his double jeopardy rights and therefore reverse.

## I.

On June 1, 1970, the police chief of Oblong, Illinois was fatally shot when he discovered Wilson and two others attempting to burglarize a local grocery. The legal tangle which followed is more complex than that event. In August, 1970, after a change of venue from Crawford to Wayne County, Wilson was tried and convicted of intent murder, felony murder, and attempted burglary.[1] The State brought these charges as separate counts and the jury returned a verdict of guilty on each.[2] Prior to sentencing, the court allowed the prosecutor's motion to *nolle prosequi* the felony murder count, Count II. The court then entered consecutive sentences of fifty to seventy-five years for intent murder, Count I, and ten to twelve years for attempted burglary, Count III. After an unsuccessful direct appeal and related motions for post-conviction relief, Wilson petitioned the district court for a writ of *habeas corpus*.[3] Upon appeal, after the writ was denied, we found the State knowingly used perjured testimony, and therefore vacated the Count I intent murder charge and remanded the proceeding for retrial within a reasonable time. *United States ex rel. Wilson v. Warden Cannon, Stateville Penitentiary*, 538 F.2d 1272, 1274–76 (7th Cir. 1976). The felony murder count, Count II, was not involved in that appeal. The conviction for burglary was allowed to stand. *Id.*

Upon remand to the Illinois court, a 1976 grand jury indicted Wilson again for felony murder.[4] The State then moved to consoli-

---

1. The Illinois Criminal Code, Ill.Rev.Stat., ch. 38, § 9–1(a) (1979), provides in pertinent part that:
   a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
   1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or ...
   3) He is attempting or committing a forcible felony other than voluntary manslaughter.
   It is settled in Illinois, as declared by the Illinois Supreme Court, that under Section 9–1(a) "[t]here is but one crime of murder" and not three separate offenses. *People v. Allen*, 56 Ill.2d 536, 543, 309 N.E.2d 544, 547, *cert. denied*, 419 U.S. 865, 95 S.Ct. 120, 42 L.Ed.2d 102 (1974). Accordingly, under Illinois law, intent murder and felony murder, Sections 9–1(a)(1) and 9–1(a)(3) respectively, constitute alternative bases for a murder conviction.

2. The indictment read as follows:
   COUNT NO. I
   Clarence Eugene Wilson ...
   ... committed the offense of Murder, in that he, intentionally and knowingly shot and killed William Jackson Fancil with a gun, without lawful justification, in violation of Chapter 38, Section 9–1, of the Illinois Revised Statutes 1969.
   COUNT NO. II
   Clarence Eugene Wilson ...
   ... committed the offense of Murder, in that he, intentionally and knowingly shot and killed William Jackson Fancil with a gun, without lawful justification, while attempting to commit the offense of Burglary, in violation of Chapter 38, Section 9–1, of the Illinois Revised Statutes 1969.
   COUNT NO. III
   Clarence Eugene Wilson ...
   ... committed the offense of Attempt, in that Clarence Eugene Wilson, with the intent to commit the offense of Burglary, he, without authority, intentionally and knowingly attempted to enter the building ... with the intent to commit therein a felony or theft, in violation of Chapter 38, Section 8–4, of the Illinois Revised Statutes 1969.
   Crawford County Circuit Court, June 10, 1970, Respondent's Appendix ("R.A.") at 1–4.

3. The proceedings subsequent to the Wayne County trial and prior to our consideration of Wilson's first habeas petition are set out in detail in *United States ex rel. Wilson v. Warden Cannon, Stateville Penitentiary*, 538 F.2d 1272, 1274–75 (7th Cir. 1976), and in *People v. Wilson*, 61 Ill.App.3d 1029, 18 Ill.Dec. 914, 378 N.E.2d 378 (5th Dist. 1978).

4. This indictment read:
   that on or about June 1, 1970, in Crawford County, Clarence Eugene Wilson committed the offense of Murder in that he, without lawful justification and while attempting to commit a forcible felony to-wit: Burglary, performed acts which caused the death of Jack Fancil in violation of Paragraph 9–1(a)(3) Chapter 38, Illinois Revised Statutes. No. 76–CF–41, Crawford County Bill of Indictment, R.A. at 36.

date the pending indictments, or, in the alternative, to reinstate the previously dismissed felony murder count of the original indictment. The Circuit Court of Wabash County, upon a change of venue, eventually denied both motions pursuant to Wilson's argument that reinstatement or joinder of the felony murder count would violate his constitutional guarantee against double jeopardy. The Wabash court allowed the State to proceed only on the intent murder count of the original indictment. A mistrial, however, was declared after the jury failed to reach a verdict.

In February 1977, venue was transferred to Williamson County, the fourth county to be involved, where the State again moved to reinstate the original felony murder count. The Williamson court granted the motion and permitted the State to present both intent murder and felony murder as alternative counts. Rather than pronouncing separately on each count, as in the first trial, the jury, as permitted by the instructions, returned a single general verdict of guilty.[5] The court imposed a sentence of fifty to seventy-five years to run consecutively with the sentence imposed on Wilson in 1970 for attempted burglary.[6] The conviction was affirmed. *People v. Wilson*, 61 Ill.App.3d 1029, 18 Ill.Dec. 914, 378 N.E.2d 378 (5th Dist. 1978).

Wilson then brought a second petition for *habeas* relief. In this petition he alleged in pertinent part that his retrial and conviction for murder after the felony murder count had been *nolle prossed* in 1970 and reinstated in 1977 placed him in double jeopardy. The district court denied Wil-

son's petition. *United States ex rel. Wilson v. Meyer*, No. 79–2285 (S.D.Ill. June 27, 1980), R.A. 129–40. This appeal followed.

## II.

■ The Double Jeopardy Clause of the Fifth Amendment provides that: "No person . . . shall be subject for the same offence to be twice put in jeopardy of life or limb," U.S.Const. Amend. 5. This constitutional guarantee is applicable to the states through the Due Process Clause of the Fourteenth Amendment, U.S.Const. Amend. 14, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and consists of three separate guarantees which protect against: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense, *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Because Wilson asserts that the *nolle prosse* of the felony murder count bars his later reprosecution for felony murder, we are concerned with only the second and third of those guarantees.

The State argues, with which the district court agreed, that the vacation of Wilson's intent murder conviction and related remand, resulting from the first appeal to this court, "wiped the slate clean" so that he might be retried on *any* of the underlying and alternative murder theories, including felony murder. That is so, it is argued, since murder is one crime in Illinois and because the Double Jeopardy Clause per-

---

**5.** The general verdict returned in 1977 against Wilson prevents us from ascertaining which murder theory was utilized by the jury in reaching its decision. Too many signs indicate that the State secured the murder conviction by prosecuting Wilson for felony murder. The record indicates that the prosecutor relied exclusively on proof of Wilson's participation in the attempted burglary to secure the murder conviction. The state trial judge in Wilson's third trial suggested that the weakest case involved the intent murder theory; conversely, he thought felony murder represented its strongest case. The prosecutor also emphasized the importance of the felony murder theo-

ry in his closing remarks. He stated that the State had only to prove Wilson aided and abetted in the commission of a burglary, as opposed to showing Wilson actually "pulled the trigger." Record at 346–47. The jury also appears to have paid specific attention to the felony murder theory. While sequestered, it sent a note back to the judge explicitly asking for more information about the felony murder charge.

**6.** Wilson has already completed his sentence for attempt burglary. Record at 287, Exhibit D.

mits retrial of a defendant in many circumstances after reversal of a conviction.

There exist a plethora of decisions from various courts which are near our case factually, some of which the State urges are dispositive of Wilson's double jeopardy claim. Our research, however, has not revealed nor has the State cited to us any controlling decision.

The Supreme Court, early on, in *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), held that the Double Jeopardy Clause barred the reprosecution of a defendant who had earlier been acquitted, but not the reprosecution of similar defendants convicted at the same trial who were granted a new trial on appeal based upon a faulty indictment. In so holding, the Court advanced the following principles governing retrial of defendants who have successfully appealed prior convictions:

> Their plea of former conviction cannot be sustained, because upon a writ of error sued out by themselves the judgment and sentence against them were reversed, and the indictment ordered to be dismissed.... [I]t is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted.

*Id.*, 163 U.S. at 671–72, 16 S.Ct. at 1195 (citations omitted). The current rationale utilized by the Court to justify the *Ball* rule focuses, *inter alia*, upon the "fairness" of balancing a defendant's interest in not being burdened by successive prosecutions against the societal cost of granting such defendants immunity from reprosecution. *See United States v. Wilson*, 420 U.S. 332, 343–46, 95 S.Ct. 1013, 1021–23, 43 L.Ed.2d 232 (1975). In *Sumpter v. DeGroote*, 552 F.2d 1206, 1211 (7th Cir. 1977), we noted that the *Ball* rule "[e]mbodies the Court's judgment that the societal cost of immunizing the guilty from retrial outweighs the heavy burdens that reprosecution imposes on the accused" (footnote omitted).

The general rule which emerges from *Ball* is that the successful appeal of a conviction does not bar reprosecution of the defendant on the same charge.[7] *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978); *North Carolina v. Pearce*, 395 U.S. 711, 719–21, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969); *Green v. United States*, 355 U.S. 184, 189, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957). This rule has been partially qualified in *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978), where the Court held that when reversal is based upon the insufficiency of the evidence necessary to support the verdict against the defendant,

---

7. *Ball* has also been interpreted to: (1) permit new theories to be added upon retrial subsequent to a reversed conviction, *United States v. Poll*, 538 F.2d 845, 847 (9th Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976); *United States v. Ragano*, 520 F.2d 1191, 1196–97 (5th Cir. 1975), *cert. denied*, 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976); (2) allow the original indictment or information to be amended to include new charges not prosecuted at the first trial, *Hardwick v. Doolittle*, 558 F.2d 292, 296–98 (5th Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); and (3) permit reprosecution for a higher offense after a state appellate court has reversed a plea-bargained conviction on a lesser included offense, *United States v. Anderson*, 514 F.2d 583, 587–88 (7th Cir. 1975) (the reason for this is that the state is viewed to conditionally relinquish the right to prosecute on the greater offense only if the defendant remains convicted of the lesser offense). *Accord, Unit-*

*ed States v. Williams*, 534 F.2d 119, 121–22 (8th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). Additionally, upon a successful appeal from a mistrial, a defendant, in certain circumstances, can be retried, *Lee v. United States*, 432 U.S. 23, 30, 97 S.Ct. 2141, 2145, 53 L.Ed.2d 80 (1977); *United States v. Jorn*, 400 U.S. 470, 484–85, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971) (plurality opinion). *See Arizona v. Washington*, 434 U.S. 497, 505–17, 98 S.Ct. 824, 830–36, 54 L.Ed.2d 717 (1978); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (retrial is barred where the prosecutor provokes the mistrial). Where the defendant, in addition, himself seeks to terminate his trial prior to a determination of his guilt or innocence, an appeal by the Government from the defendant's successful efforts to do so does not violate the Double Jeopardy Clause. *United States v. Scott, supra*, 437 U.S. at 95–96, 98 S.Ct. at 2196.

further prosecution is precluded. *Ball* and its many progeny also stand for the proposition that one convicted of a crime may not, in the absence of a reversal or vacation of the conviction upon appeal, be reprosecuted for the same offense. *Harris v. Oklahoma, supra,* 433 U.S. 682 at 682–83, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio, supra,* 432 U.S. 161, 165–67, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce, supra,* 395 U.S. at 717, 89 S.Ct. at 2076. *See United States v. Wilson, supra,* 420 U.S. at 343, 95 S.Ct. at 1021.

The Supreme Court's decision in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), is regarded as the cornerstone of double jeopardy thought. *See United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 432, 66 L.Ed.2d 328 (1980). Green had been indicted in one count charging arson and another charging him with a death attributable to the arson. The trial court instructed the jury that it could find Green guilty of arson under the first count and of either first degree murder or second degree murder under the second count.[8] Under the applicable statutes, second degree murder involved life imprisonment while a first degree murder conviction could bring the death penalty. Second degree murder, therefore, represented a lesser included offense of first degree murder. *Id.,* 355 U.S. at 185–86, 78 S.Ct. at 222. Green was found guilty of arson and of second degree murder. The jury did not specifically pronounce a verdict upon the first degree murder count. The State, upon remand from Green's successful appeal of his second degree murder conviction, used the new trial as an opportunity to reprosecute the first degree murder charge. This time, the jury adjudged Green guilty of first degree murder. Again Green appealed. The Court held that the reprosecution of Green for first degree murder was violative of the

Double Jeopardy Clause. *Id.,* 355 U.S. at 198, 78 S.Ct. at 229. The Court interpreted the jury's silence on the first degree murder charge in the first trial as an implicit acquittal, and also noted that the jury was dismissed without Green's consent and only after he had been placed in jeopardy on that charge. *Id.,* 355 U.S. at 190–96, 78 S.Ct. at 225–28. Both observations constituted grounds for finding a violation of the Double Jeopardy Clause. *Id.* The prosecution contended that in order for Green to secure the reversal of his second degree murder conviction, he was required to waive his valid defense of former jeopardy not only for that offense, but also for the first degree murder charge, for which he was not convicted and which was not involved in the appeal. *Id.,* 355 U.S. at 193, 78 S.Ct. at 226. The Court, in rejecting this argument, stated:

> The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy.

*Id.,* 355 U.S. at 193–94, 78 S.Ct. at 226–27. *See Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969). Further, in *Abney v. United States,* 431 U.S. 651, 660–62, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977), the Court restated the proposition that the primary purpose of the Double Jeopardy Clause is to prohibit successive exposure to the rigors of trial.

■ Forcing Wilson to undergo a second prosecution for felony murder placed him in a related situation feared by the Court in *Green* and *Abney.* It is clear that jeopardy had attached as to the felony murder count. *See Serfass v. United States,* 420 U.S. 377, 391–92, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265

---

8. Although both first and second degree murder were brought under one count, the Court treated them as separate offenses. In justification of this treatment, the Court noted, 355 U.S. at 190 n.10, 78 S.Ct. at 225;

"In substance the situation was the same as though Green had been charged with these different offenses in separate but alternative counts of the indictment. The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count."

(1975). No appeal of Wilson of the intent count reactivated the felony count's viability for retrial. The State's arguments ignore what actually occurred. Two convictions for two distinct counts of murder under the same Illinois murder statute were returned. The State, realizing as well as conceding that no conviction or sentence could be entered on both, selectively *nolle prossed* one of the two—the felony murder count.

Controversy exists as to both the reasons for and the impact of this *nolle prosequi* motion. The State submits that it was "more likely" that the *nolle* motion represented an effort to make a redundant verdict disappear, to clear up the record, and to prevent prejudice to Wilson. That conclusion is derived directly from a holding of an Illinois court which had previously reviewed Wilson's third trial. *People v. Wilson*, 61 Ill.App.3d 1029, 18 Ill.Dec. 914, 916, 378 N.E.2d 378, 380 (5th Dist. 1978). The State also avers that the overall effect of the grant of its *nolle prosequi* motion was to aid Wilson "by eliminating potentially prejudicial matters from records that might eventually be considered by parole authorities and by eliminating the need to appeal from an improper 'felony murder' judgment and sentence."

It is, however, equally "likely" that the reasons for the State's motion were three-fold: (1) to attempt to compensate for its choice of initially indicting Wilson in two counts of murder under two different theories, given that murder is but one crime in Illinois; (2) to prevent *any* potential double jeopardy question from arising as to sentencing for the felony murder count as well as under the separate count related to the

felony itself; and (3) to allow greater, cumulative, or consecutive sentencing of Wilson, since he could be sentenced consecutively under an intent murder count and for the underlying felony of attempt burglary, *see Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). This speculation is supported by reference to a statement made at Wilson's second trial where the court noted:

> The State, in taking the murder charge, got the benefit of a consecutive sentence, which they couldn't have had if they had gone the other route. If they had gone the felony-murder route, they couldn't have gotten consecutive sentencing. There is no question about that. I'm sure that's why they nolled the one and took the other.

Record at 57.

The impact, however, not the motivation behind the State's act to *nolle prosequi* the felony murder count is what is important. We view the effect of that action as amounting to an indication by the State that it would not longer prosecute or proceed against Wilson on the felony murder count. Thus, all that remained after the *nolle* were separate guilty verdicts for the intent murder count and for the attempt burglary count.[9]

The State relies upon the fact that our prior decision permitted it to "[r]etry the petitioner on the murder charge." *United States ex rel. Wilson v. Warden Cannon, Stateville Penitentiary, supra*, 538 F.2d at 1278. The State urges that since the decision placed no limitations upon which murder theories were applicable at retrial, all

---

**9.** The State conceded at oral argument that if a prosecutor had *nolle prossed* a single crime after jeopardy had attached, such as embezzlement, no subsequent prosecution whatsoever would have been permitted. The State argues that the fact that felony murder is one theory of murder in Illinois and that Wilson's appeal and reversal on the intent murder theory allegedly wiped the slate clean so as to permit retrial on felony murder served to distinguish this case from the norm—*e. g.* embezzlement.

Our view is otherwise. Here, no difference exists between a *nolle* of a single crime and a *nolle* of a separate and distinct count of murder which included one theory of the crime.

The State, in addition, makes much of Wilson's failure to object to the *nolle* motion, almost implying that his failure should preclude objection at a later date. We cannot agree. No defendant should be expected to object to action by a prosecutor which effectively terminates judicial consideration of a conviction.

theories remained viable. We cannot agree.[10] All that was before us was an appeal by Wilson of his intent murder conviction based upon, *inter alia*, the use by the State of perjured testimony. The conviction under the felony murder count—a separate count—was not before us.

█ The district court, viewing murder as one crime in Illinois with different theories, wrongly concluded that Wilson himself was the one who received a second chance and that it would be contrary to the policies underlying the Double Jeopardy Clause to permit him to escape conviction due to a "procedural quirk which has not harmed [Wilson] in any way."[11] *Wilson v. Meyer, supra,* R.A. at 133. There is strong suggestion in the record that the purpose behind the State's *nolle* motion was reasoned action, rather than a mere quirk. Further, Wilson suffered definite prejudice. The *nolle prosse* precluded any appellate review of the guilty verdict on the felony murder count, even if Wilson had desired to pursue such a course. If Wilson's felony murder conviction had been determined on appeal

to have been based upon insufficient evidence, clearly no reprosecution could have been permitted. *Burks v. United States, supra,* 437 U.S. at 18, 98 S.Ct. at 2150. The abandonment of prosecution by the State of the felony murder count effectively foreclosed Wilson from exploring that avenue upon appeal.

The State attempts to utilize *Ball* and its progeny in order to justify the retrial of Wilson for felony murder. The State contends, and the district court agreed, that because murder is one crime in Illinois the reversal of the intent murder conviction "wiped the slate clean." Since the original felony murder count, however, did not remain viable subsequent to Wilson's first trial, *Ball* and its many progeny are inapplicable.[12] Further prosecution of the count should have been barred. Under *Green v. United States, supra,* 355 U.S. at 193–94, 78 S.Ct. at 226–27, and *Benton v. Maryland, supra,* 395 U.S. at 796, 89 S.Ct. at 2063. Wilson should not be required to waive his valid claim of former jeopardy as to the *nolle prossed* felony murder count in order to secure reversal of his conviction under a

---

**10.** The State's argument here is founded upon its own view of the effect of our decision, rather than anything which can be fairly derived from the decision itself. Interestingly, the State argued below that this court intimated no view on whether Wilson might be retried for felony murder. Record at 171.

**11.** We also disagree with the conclusion of the Illinois court that no double jeopardy violation existed because the two verdicts on the two counts, in effect merged into a single judgment of murder. *People v. Wilson, supra,* 18 Ill.Dec. at 916, 378 N.E.2d at 380. This conclusion, cited by the State here as controlling, ignores what actually occurred. Wilson was indicted on two theories of murder under two counts and was adjudged guilty on each. Only then did the State *nolle prosse* the felony murder count. All that remained was the intent murder count. Thus, it cannot be said that the two verdicts merged into a single judgment, as only one verdict remained, with nothing whatsoever to merge with.

**12.** The *Ball* rule, which permits a retrial upon reversal of a conviction, has been explained on two alternative theories which state that the defendant either waives his double jeopardy claim by his appeal, or that the first jeopardy

continues until he is acquitted or his conviction becomes final. *United States v. Wilson, supra,* 420 U.S. 343–44 n.11, 95 S.Ct. at 1021–22; *Sumpter v. DeGroote, supra,* 552 F.2d at 1210 n.14. *See United States v. Tateo,* 377 U.S. 463, 465–66, 84 S.Ct. 1587, 1588–89, 12 L.Ed.2d 448 (1964); *Green v. United States, supra,* 355 U.S. at 189, 78 S.Ct. at 224. Under either theory, our facts are distinguishable. Wilson did not appeal the original separate felony murder conviction. Nor can jeopardy be viewed here as continuing since it was the State itself which *nolle prossed* the count.

Furthermore, we note that the decisions which permit, without double jeopardy attaching, appeal from orders arresting judgments after verdicts have been entered against a defendant are not controlling. *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955). *See, e. g., United States v. Wilson, supra,* 420 U.S. at 344–45, 95 S.Ct. at 1022–23. In those cases, no second trial was required since a reversal merely necessitated that the jury verdict of guilty be reinstated. *Id.; United States v. Ramos,* 558 F.2d 545, 546 (9th Cir. 1977). Here, it was the State which *nolled* the felony murder count, not the court, upon Wilson's motion, arresting a judgment after conviction.

separate intent murder count.[13] That is true even considering that murder is one crime in Illinois. Moreover, the *Ball* rule is not applicable here, as the reprosecution of Wilson for felony murder violated the "sound principles of justice" upon which the rule is based. *See United States v. Wilson, supra,* 420 U.S. at 344, 352, 95 S.Ct. at 1026; *United States v. Tateo, supra,* 377 U.S. at 466–68, 84 S.Ct. at 1589–90; *Sumpter v. DeGroote, supra,* 552 F.2d at 1210–13 (and the cases cited therein).

In addition, the State submits that the reinstatement of the felony murder count *may* be viewed as affording it the opportunity to either pursue a new theory, *citing, United States v. Ragano, supra,* 520 F.2d at 1191, and *United States v. Poll, supra,* 538 F.2d at 845, or amend the original charges, *citing, Hardwick v. Doolittle, supra,* 558 F.2d at 292. The State's reliance on these cases is misplaced. *Ragano* and *Poll* involved successful attempts by the government to prosecute the defendants for different statutory offenses or theories after the respective reversals of other separate charges upon appeal. *Id.,* 538 F.2d at 847; 520 F.2d at 1197–98. *See United States v. Ewell,* 383 U.S. 116, 124–25, 86 S.Ct. 773, 778, 15 L.Ed.2d 627 (1966). In *Doolittle,* after reversal on two original counts, the prosecutor obtained a subsequent indictment which charged the defendant with two additional counts not charged in the original indictment. The Fifth Circuit affirmed the denial of the defendant's habeas petition stating that prosecution and trial on the added counts did not result in invocation of double jeopardy protection because the new counts were not the same offense as the original counts and thus, as to the new counts, the defendant was only placed in jeopardy once. *Id.,* 558 F.2d at 296–98. In those three decisions, in direct contrast to Wilson's case,

the new theory, offense or count had *not* been charged or prosecuted in the original trial. The later additions were allowed in part because the Double Jeopardy Clause did not necessarily require a prosecutor to join in a single proceeding all possible charges against a defendant. *See Ashe v. Swenson,* 397 U.S. 436, 445–57, 90 S.Ct. 1189, 1195–1201, 25 L.Ed.2d 469 (1970) and 397 U.S. 448–60, 90 S.Ct. 1196–1202 (Brennan, J., concurring). Joinder is also permitted in light of the general rule that if a conviction is reversed, the slate is usually wiped clean and the defendant may then be prosecuted for a different statutory violation regardless of whether it is classifiable as the same or as a separate offense. *United States v. Poll, supra,* 538 F.2d at 847. *See Bretz v. Crist,* 546 F.2d 1336, 1340–46 (9th Cir. 1976), *aff'd,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). That, however, is not the present case.

### III.

We hold that the retrial of Wilson for murder under a felony murder count or theory constituted a violation of the Double Jeopardy Clause. It was the retrial for felony murder under the felony murder count or theory and not that of intent murder which provided Wilson with a significant double jeopardy claim. Nothing requires that Wilson's double jeopardy claim be extended to protect him from murder prosecution under any other theory or count. The intent murder count continues to be viable, having remained so through our reversal in 1976, the mistrial in Wabash County, and the Williamson County proceedings currently on review herein.

We reverse and remand for proceedings consistent with this opinion on the condition that the writ shall issue and Wilson be discharged unless retried under the intent murder count within a reasonable time to be determined by the district court.[14] Any

---

**13.** This conclusion is derived in part from considerations of the equities and other circumstances involved herein and is not based upon a "mechanical application of an abstract formula" to resolve this novel double jeopardy issue, which is forbidden. *Wade v. Hunter,* 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974 (1949).

**14.** All other arguments which have been raised herein have been considered and have been found to be without merit.

retrial must be without recourse to the felony murder theory or count.

REVERSED AND REMANDED.