Christopher L. HUNDLEY, Plaintiff,

v.

D.R. McBRIDE, Respondent.

No. 3:95–cv–0696AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 14, 1995.

Christopher L. Hundley, Westville Correctional Center, Westville, IN, pro se.

Randall Koester, Office of Indiana Attorney General, Indianapolis, IN, for respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Christopher Hundley, an inmate confined at the Westville Correctional Center ("WCC"), filed this petition under 28 U.S.C. § 2254, seeking restoration of good time credits. The response filed by the respondent, WCC Superintendent D.R. McBride, demonstrates compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982).

A petition for writ of habeas corpus under 28 U.S.C. § 2254 is a device employed to challenge the fact or duration of a prisoner's confinement, and seeks the release of the prisoner from confinement or a shortened period of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Graham v. Broglin*, 922 F.2d 379 (7th Cir.1991). A writ of habeas corpus functions to grant relief from unlawful custody or imprisonment. *Brownstein v. Director, Ill. Dept. of Corrections*, 760 F.2d 836 (7th Cir.), *cert. denied*, 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 138 (1985). The loss or denial of good time credits has the effect of increasing the duration of a prisoner's confinement, and challenges to loss of good time are within the ambit of § 2254. *Preiser v. Rodriguez, supra; Hanson v. Heckel*, 791 F.2d 93 (7th Cir.1986).

On May 10, 1995, Correctional Sergeant Coleman wrote a conduct report against Hundley for engaging in sexual acts with another. Hundley pled not guilty to the charge, and appeared with his lay advocate before a three member conduct adjustment board ("CAB") on May 24, 1995. The conduct report stated that:

> On the above date and approx. time, this writer was making a routine dorm round of C–2–North. Upon arriving to the room where C2–N2–7L is located, this writer observed a white towel covering the room window. This writer opened this door and found offender Vernon Anderson 883831 slumped over offender Christopher Hundley from the rear. Both offenders Gray Gym shorts was down past there (sic) ankles. Once this offender noticed that it was me. This offender started to plead his case, and begin to pull his gym shorts up around his waist.

Subsequently, Sgt. Coleman supplemented the conduct report with a memorandum in which he stated:

> On May 10, 1995 at approx 7:25PM, this writer was making a routine dorm round of C–2 North. Upon arriving to the location where the bed location of C2–N2–7L, this writer obseverd (sic) a white state towel over the window that was mention(ed). I knew that something was not right, because of what I was obsevering (sic) then. This writer gentlely (sic) place(ed) my BO key in that door lock and open(ed) the door. Upon opening of this door, this writer obsvered (sic) the following. Offender Vernon Anderson 883831 had offender Christopher Hundley bent over, with offender Vernon Anderson penis inserted into Hundley anus. Both offender was naked from the waist down. Both offender pulled up there (sic) underwear and gave me both of there (sic) ID badges when this writer asked for them.

At the hearing, Hundley submitted testimony which the CAB summarized as follows:

> Yes, I am prepared for this hearing. Sgt. Coleman is lying. I was in Anderson's room and was showing him a rash I had in my groin area. My shorts were not around my ankles they were around my knees, and I was pulling them up. The window was covered because I did not want anyone to see what I was doing. I'm kind of shy.

Hundley also submitted a witness statement from Anderson which corroborated his testimony.

The CAB found Hundley guilty, "based on Sgt. Coleman's statement & CR (Conduct Report) in which he observed offender Hundley with his shorts around his ankles bent over with offender Anderson penis in his Hundley's anus." Hundley availed himself of the administrative appeals procedure established by the Indiana Department of Correction ("IDOC"). *Markham v. Clark*, 978 F.2d 993 (7th Cir.1992). In his appeal, Hundley stated:

> I am appealing this decision and sanction by the C.A.B. because there wasn't any *physical evidence,* and unbeknownst to me the *lay advocate* allowed the reporting officer a opportunity to ammend (sic) & rectify his original writing. Also the C.A.B. errored (sic) in computing my good time. (emphasis in original)

Hundley also submitted a brief in support of his appeal in which he argued that Sgt. Coleman's unsupported word was insufficient to support a finding of guilt. The respondent and the IDOC disciplinary review manager affirmed the finding of guilt.

In his habeas petition, Hundley asserts that the finding of guilt is infirm because the IDOC failed to perform any test to determine if sexual intercourse had occurred, because Sgt. Coleman failed to state his name and rank or to include Hundley's IDOC number in the body of the report, because the conduct report did not contain the required wording to sustain a finding of guilt, and because Sgt. Coleman's additional statement constituted double jeopardy.

■■■ The issues presented in Hundley's administrative appeals are properly before the court, but the respondent correctly asserts that Hundley committed procedural default in regard to all issues not included in his administrative appeal. *Markham v. Clark,* 978 F.2d at 995. In any event, even if not procedurally defaulted, Hundley's allegations concerning the wording of the conduct report fall far short of stating a federal due process claim and the Fifth Amendment's double jeopardy clause, which is limited to criminal prosecutions, has no application to

prison disciplinary proceedings. *Gorman v. Moody,* 710 F.Supp. 1256, 1266 (N.D.Ind. 1989). The issues which are properly before the court are the failure of the IDOC to perform any scientific tests to confirm sexual intercourse, and whether Sgt. Coleman's statements are sufficient to support a finding of guilt.

■■■ The seminal case of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), established that a state prisoner has certain procedural protections mandated by the Fourteenth Amendment's due process clause in connection with deprivation of good time credits in prison disciplinary hearings. These are essentially, notice of the allegations, an opportunity to be heard and to present witnesses, and adjudication by a neutral committee that puts its findings on the record. *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir.1987). Once a prisoner has been granted these procedural protections, the role of a reviewing court "is limited to determining whether there was sufficient evidence to support the committee's decision." *Id.* at 733. A committee's determination of guilt is constitutionally valid if there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

From its review of the materials submitted by the respondent, the court concludes that Hundley was afforded the procedural protections mandated by *Wolff v. McDonnell.* Accordingly, this court's only role is to determine if the finding of guilt is supported by sufficient evidence. *McKinney v. Meese,* 831 F.2d at 733.

In *Superintendent. Mass. Correctional Institution, Walpole v. Hill,* inmates were found guilty of assaulting another inmate based solely on the testimony of a correctional officer who stated that he heard some commotion in a walkway and, upon investigating, discovered an inmate who evidently had just been assaulted and three inmates running down the walkway. He saw no other inmates in the area, which was enclosed

by a chain link fence. The officer concluded that the three inmates had assaulted the victim and that they had acted as a group. The victim later stated that the three inmates had not caused his injuries. The disciplinary committee discounted the victim's testimony, and found the accused inmates guilty based on the officer's observations. The Court concluded that although the evidence "might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* at 457, 105 S.Ct. at 2775.

Hundley first asserts that the finding of guilt is infirm because the state did not perform a scientific test to determine if intercourse had occurred. But in *Hill*, the Supreme Court held that "(t)he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775. Accordingly, the due process clause does not require prison officials to conduct scientific testing to confirm an officer's direct observation of sexual contact.

Hundley next argues that Sgt. Coleman's statements are not sufficient to support a finding of guilt. In this action, as in *Hill*, the CAB relied on the statement of a correctional officer over contrary inmate testimony. In *Hill*, the reporting officer did not witness the assault; he arrived shortly after the incident and based his conclusions on circumstantial evidence he observed. The circumstances in this action are more favorable to the state because Sgt. Coleman directly witnessed Hundley and Anderson's actions. Sgt. Coleman stated that he observed both inmates with their pants around their ankles, and that Anderson was slumped over Hundley with his penis inserted into Hundley's anus.

The CAB was not required to accept the reporting officer's version of events over the inmates' version, but it chose to do so. On habeas review, that factual determination is binding on the federal courts, and under *Hill*, Sgt. Coleman's statements about his direct observations of Hundley and Anderson provide sufficient evidence upon which to base a finding of guilt. Accordingly, this petition for writ of habeas corpus must be **DENIED.**

SO ORDERED.