**Richard Lee ROWOLD, Petitioner,**

v.

**Dan R. McBRIDE, Respondent.**

**No. 3:96–CV–0857 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 16, 1997.

---

Richard Lee Rowold, pro se, Westville, IN.

Mary Ann Gregorio, Office of the Atty. Gen., Indianapolis, IN, for Dan R. McBride and Ind. Atty. Gen.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This is a challenge under the First Amendment and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb (RFRA), to a prison Conduct Adjustment Board (CAB) proceeding by *pro se* petitioner Richard Lee Rowold (Rowold). Rowold was housed at the Plainfield Correctional Facility, Indiana Youth Center (IYC) during a significant portion of the events described here and is currently housed at the Westville Correctional Facility. Rowold filed his petition for *habeas corpus* relief under 28 U.S.C. § 2254 on November 20, 1996, challenging a conviction in a prison disciplinary proceeding, styled by the Indiana Department of Correction as "IYC96–06–0005," that occurred while he was incarcerated at the IYC.

### I. FACTS AND PROCEDURAL HISTORY

On May 31, 1996, Correction Captain R. Hightshue filed a report of conduct against Rowold charging him with violating prison disciplinary code 347C, refusing to obey an order from any staff member. Specifically, the report states as follows,

On 05/31/96 at approximately 2335 hours, Offender Rowold, Richard # 922713 was brought to my office in the custody building from the North Dorm. He had refused to do extra duty. Offender Rowold stated to this Captain, Capt. R. Hightshue, that he had received 30 hours extra duty from C.A.B. and at this time he was refusing to do his extra duty. I, Capt. R. Hightshue

told him that I would not exempt him from extra duty given to him by C.A.B. at this time. Offender Rowold refused three more times to do his extra duty after being ordered to do so by me. Was placed on DU on this same date by me? [sic]

Ofc. Hardy—He was there. (written at the bottom of the page)

*See* Respondent's Return Order to Show Cause, Ex. 1, "Report of Conduct".

Rowold received a copy of this report on June 3, 1996. Rowold also received a Notice of Disciplinary Hearing Form. In response to this notice Rowold pled "not guilty" and requested the assistance of a lay advocate. Rowold also indicated that he intended to present witness statements by prison officials at the hearing.

During the hearing, which was conducted on June 11, 1996, Rowold testified on his own behalf and included in his comment that he was both a Messianic Jew and a Seventh Day Adventist. Rowold claimed "I stated I would do my extra duty but not on my religious day of rest. Due to my religious conscience, I cannot work the Sabbath. I did not tell my Captain that I would not do the [extra] duty." *See* Respondent's Return Order to Show Cause, Ex. 1, "Report of Disciplinary Hearing". Rowold also submitted a statement in which he alleged the Report of Conduct was inaccurate. In his statement, he claimed that "[t]he only words that I had a chance to say to Captain Hightshue were, 'Sir, with all due respect.' Before I could explain my cause, he ordered me transferred to [the] detention unit." *See* Respondent's Order to Show Cause, Ex. 1, "Offender's Comments and Statement."

After reviewing the evidence presented as well as considering witness statements, the CAB found Rowold guilty. The CAB's finding of facts and statement of evidence relied on read,

H/O has considered all evidence to include the offenders [sic] statement, the witness statement, [ ]. The conduct report written by the credible Capt. R. Hightshue. The

H/O finds Offender Rowold # 922713 guilty of 347C, refusing to obey an order. *See* Respondent's Return Order to Show Cause, Ex. 1, "Report of Disciplinary Hearing". The CAB imposed sanctions of twenty hours extra duty, thirty days disciplinary segregation (twenty-six days suspended), demotion in credit class from II to III, and deprivation of sixty days earned credit time.

On June 20, 1996, Rowold filed a Disciplinary Hearing Appeal with Superintendent Christopher Meloy. In his appeal, Rowold stated, "the allegations as written in this Report of Conduct are completely wrong. The witness' statements are accurate but the only words I had a chance to say directly to Captain Hightshue were, 'Sir with all due respect. I never refused to do my assigned duty. . . .' " *See* Respondent's Return Order to Show Cause, Ex. 1, "Disciplinary Hearing Appeal." Meloy denied Rowold's appeal on July 11, 1996.

Rowold made a final administrative appeal to E. Janeen Stewart, Administrative Assistant for Adult Operations at the Indiana Department of Corrections. On September 30, 1996, Stewart denied Rowold's appeal because there was no finding of procedural or due process error. *See* Respondent's Return Order to Show Cause, Ex. 1, "Letter from Stewart to Rowold dated October 29, 1996."

As a result of this disciplinary conviction, Rowold was later convicted of violating disciplinary code 105A, habitual conduct rule offender. Rowold was found guilty of four Class A, B, or C rule violations involving four unrelated incidents within the last twelve months. Rowold's sanction for being a habitual offender was the deprivation of sixty days earned credit time.

After reevaluating Rowold's disciplinary appeal, Stewart vacated the sanctions for refusing to obey a staff member's orders. Rowold's demotion in credit class and deprivation of earned credit time were vacated. However, Stewart affirmed the disciplinary conviction. This all involves memories of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)[1].

1. In *Sandin v. Conner*, the Supreme Court addressed due process rights for prisoners in *habe-* *as corpus* proceedings.

## II. ARGUMENTS

Rowold turned his attentions to federal court by filing his petition for writ of *habeas corpus* in this court on November 20, 1996. In his petition, Rowold raises six separate due process claims. First, he claims the Respondent's statement of facts are inaccurate in the Report of Conduct. *See* Respondent's Return Order to Show Cause, Ex. 1, "Report of Conduct." Second, Rowold alleges his 105A disciplinary sanctions for failure to obey a prison official and reduction of good credit time for violating the habitual offender rule were the result of double jeopardy of Amendment V of the Constitution of the United States because the issues involved in the habitual offender hearing were before this court on due process claims. Third, Rowold claims Respondent violated his First Amendment rights by impeding his faith and right to worship. Fourth, Rowold states 28 U.S.C. § 2254 does not apply to this case. Fifth, the Respondent violated the Religious Freedom Restoration Act by imposing sanctions which were a substantial burden on his exercise of religion. Sixth, the extra work duty was not reasonably related to a legitimate penological interest. Thus, Rowold requests that this court grant his petition for federal *habeas* relief.

The Respondent filed his Return Order to Show Cause on January 28, 1997, demonstrating the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). In his response, McBride argues Rowold's due process rights were neither violated by extra work duty nor the by the CAB's hearing on June 6, 1996. On May 27, 1997, after an extension of time to file Traverse was granted by this court, Rowold filed his Traverse in this matter, in which he countered the arguments by the Respondent. Because Rowold filed his Traverse by the extended deadline, Respondent's reference to *Lewis v. Faulkner* is moot.

## III. DUE PROCESS CLAIMS

Rowold raises six separate due process claims before this court. It is Respondent McBride's contention that these claims fail on their merits. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), addressed due process rights of prisoners. In *Sandin,* Chief Justice Rehnquist, writing on behalf of the Supreme Court, stated,

> prisoners do not shed all constitutional rights at the prison gate, but "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." (citations omitted)

\* \* \* \* \* \*

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483–85, 115 S.Ct. at 2300. This court has recently followed the Supreme Court's opinion in *Sandin* on numerous occasions: *See Bonner v. Parke,* 918 F.Supp. 1264 (N.D.Ind.1996); *Stone–Bey v. Barnes,* 913 F.Supp. 1226 (N.D.Ind.1996); *McKinney v. Hanks,* 911 F.Supp. 359 (N.D.Ind.1995).

Here, Stewart, the Administrative Assistant, vacated the sanction for failure to obey an order depriving him of sixty days earned credit time. Therefore, Rowold has no claim; no atypical or significant hardship was placed on Rowold because he did not lose his earned credits as a result of the disciplinary hearing. Rowold argues, however, this disciplinary proceeding led to his subsequent habitual violator hearing, and as a result, he lost sixty days earned good time. This has some of the flavor of an argument under *Maleng v. Cook,* 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). Because Stewart vacated portions of Rowold's sanction, yet upheld the disciplinary conviction, Rowold's deprivation of sixty days earned time for being a habitual violator is sound. The CAB found

Rowold guilty of committing four violations within twelve months, and because Stewart did not overturn Rowold's last conviction, Respondent did not violate Rowold's due process rights.

## A. INCORRECT DISCIPLINARY REPORT

■ Rowold first argues the disciplinary report is incorrect, and as a result he received sanctions and a habitual offender ruling. The Supreme Court in *Superintendent, Mass. Corr., Institution at Walpole v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), held "the requirements of due process are satisfied if some evidence supports the decision by the disciplinary board." This standard gives the disciplinary board wide berth and due deference in *habeas* proceedings. The Supreme Court stated in *Turner v. Safley,* 482 U.S. 78, 92–93, 107 S.Ct. 2254, 2263, 96 L.Ed.2d 64 (1987), "we think that the choice made by correction officials—which is, after all, a judgment 'peculiarly within [their] province and professional expertise,'—should not be lightly set aside by the courts." (quoting *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806–07, 41 L.Ed.2d 495 (1974)). The only inquiry necessary for this court is "whether there is evidence in the record that could support the conclusion reached by the [CAB]." *Id.* at 455–456, 105 S.Ct. at 2774. The court in *Meeks v. McBride,* 81 F.3d 717 (7th Cir.1996) stated,

> because the "some evidence" standard ... does not permit courts to consider the relative weight of the evidence presented to the disciplinary board, it is '[g]enerally immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability if the evidence on which the disciplinary authority relied' in support of its conclusion.

*Id.* at 720 (quoting *Viens v. Daniels,* 871 F.2d 1328, 1335 (7th Cir.1989)).

■ Although the CAB decision is reviewed under the "some evidence standard", a "sufficient indicia of reliability" must exist to insure that its decision was not arbitrary. *Id.* at 720. If the courts were to substitute their judgment for that of prison officials and their disciplinary boards, "[c]ourts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby, 'unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.'" 482 U.S. 78, 89, 107 S.Ct. 2254, 2262 (quoting *Procunier v. Martinez,* 416 U.S. 396, 407, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974)). The Court has, on many occasions, refused to impose its judgment on the penal system as Chief Justice Rehnquist observed in *O'Lone v. Shabazz,*

> [w]e take this opportunity to reaffirm our refusal, even where claims are made under the First Amendment, to 'substitute our judgment on ... difficult and sensitive matters of institutional administration,' for the determinations of those charged with the formidable task of running a prison.

482 U.S. 342, 353, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282 (1987), (quoting *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 3233–3234, 82 L.Ed.2d 438 (1984)).

The United States Court of Appeals for the Seventh Circuit has outlined the necessary procedures which insure an inmate's due process rights have not been violated. In *Rasheed-Bey v. Duckworth* the court held: Due Process entitles an inmate to receive,

> (1) advance (at least twenty-four hours before hearing) notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

969 F.2d 357, 361 (7th Cir.1992)(citing 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–567, 94 S.Ct. 2963, 2978–2980, 41 L.Ed.2d 935 (1974)).

■ Here, the CAB provided Rowold with all prescribed elements. Rowold called three prison officers as witnesses to the event, they all stated Rowold refused to do the extra

work duty. These three officers support each other's testimony and based on the record these statements were relied on during the disciplinary hearing. No error was committed by the Respondent in relying on the testimony of the Petitioner's witnesses in finding him guilty under the "some evidence" standard. The fact that Rowold claims "the only words I had a chance to say directly to Captain Hightshue were, 'Sir with all due respect ...'" are at most a part of the credibility determining function assigned to the CAB.

## B. DOUBLE JEOPARDY

 Rowold alleges his 105A disciplinary sanctions and reduction of good credit time for violating the habitual offender rule were the result of double jeopardy because the issues involved in the habitual offender hearing were before this court in a *habeas corpus* proceeding. "The Fifth Amendment's Double Jeopardy Clause protects individuals against three types of violations: prosecuting a defendant again for the same conduct after an acquittal, prosecuting a defendant for the same crime after conviction; and subjecting a defendant to multiple punishments for the same crime," *Garrity v. Fiedler,* 41 F.3d 1150, 1151–1152 (7th Cir. 1994). The Fifth Amendment's double jeopardy clause applies to criminal, not civil, prosecutions. The Supreme Court has held "the risk to which the Clause refers is not present in proceedings that are not 'essentially criminal,'" *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (quoting *Helvering v. Mitchell,* 303 U.S. 391, 398, 58 S.Ct. 630, 632–633, 82 L.Ed. 917 (1938)). The concept of double jeopardy is to avoid the risk of potential trial or conviction, not to avoid punishment. The Fourteenth Amendment clearly includes a double jeopardy component obligatory on the states. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and *Wilson v. Meyer,* 665 F.2d 118 (7th Cir.1981).

 The fact that Rowold had a *habeas* case before this court when the prison officials conducted the habitual violator hearing does not in any way invoke the Fifth Amendment's double jeopardy. This court has held in *Hundley v. McBride,* 908 F.Supp. 601, 603 (N.D.Ind.1995) "the Fifth Amendment's double jeopardy clause, which is limited to criminal prosecutions, has no application to prison disciplinary proceedings." Prison disciplinary proceedings do not constitute prosecution under the double jeopardy standard, even where sanctions impose an extension of the mandatory release date. *Hundley v. McBride,* 908 F.Supp. 601 (N.D.Ind.1995); *Meeks v. McBride,* 81 F.3d 717 (7th Cir. 1996); *Garrity v. Fiedler,* 41 F.3d 1150, 1152 (7th Cir.1994). Requiring the delay of disciplinary hearings until pending court claims on those issues are resolved would cause unnecessary congestion in both the courts and the penal system.

## C. FIRST AMENDMENT CLAIMS

Rowold claims Respondent violated his First Amendment rights by impeding his faith and right to worship. The United States Court of Appeals for the Seventh Circuit has held it is necessary to balance the prisoner's rights "to be afforded reasonable opportunity to exercise [his] First Amendment rights" against "the legitimate goals of the penal institution." *Hadi v. Horn,* 830 F.2d 779, 783 (7th Cir.1987). The court in *Hadi* relied on the *Turner* standard. In *Turner v. Safley,* 482 U.S. 78, 88, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), the Supreme Court held "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

Chief Justice Rehnquist, writing for the Supreme Court the same year as *Turner,* in *O'Lone* stated;

> To ensure that court afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.

482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

The Court in *O'Lone,* began its discussion with two basic premises, "convicted prisoners

do not forfeit all constitutional protections by reason of their conviction and confinement in prison," and "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (citation omitted). The Court ultimately held in *O'Lone* that it refuses to "substitute [its] judgment on ... difficult and sensitive matters of institutional administration,' for the determinations of those charged with the formidable task of running a prison." *Id.* at 353, 107 S.Ct. at 2407.

■ It is necessary to apply the *Turner* and *O'Lone* standards to the case at bar. Here, the prison's interest in assigning extra work duty to inmates who have violated a regulation is apparent and may certainly be defined as legitimate. It is this court's position that due deference is owed to prison officials in matters such as this.

### D. *HABEAS CORPUS* STANDARD OF REVIEW

■ Rowold states 28 U.S.C. § 2254 does not apply to this case. A claim under 28 U.S.C. § 2254 requires the federal *habeas* court to ensure the state criminal conviction was not achieved at the expense of the Petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United Stated described the role of the federal district courts in *habeas* proceedings,

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal *habeas corpus* statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal *habeas corpus* court to appraise a claim that constitutional error did occur—

reflecting as it does the belief that the "finality" as a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Jackson v. Virginia*, 443 U.S. 307 (1979), at 323, 99 S.Ct. 2781 at 2791, 61 L.Ed.2d 560 (citation omitted).

The Congress of the United States recently codified the holdings of *Jackson* and its progeny through the Antiterrorism Effective Death Penalty Act (AEDPA), which amended 28 U.S.C. § 2254, in relevant part, as follows:

In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*See* 28 U.S.C. § 2254(e)(1).

When Congress passed the AEDPA, the standards of review that the court must apply to the merits of a petition for writ of *habeas corpus* under § 2254 also changed significantly. Section 2254 was further amended in pertinent part:

An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).

In *Sweeney v. Parke*, 113 F.3d 716 (7th Cir.1997), the Seventh Circuit suggested the amended *habeas* statute applies to determi-

nations made by administrative bodies. *See also, Evans v. McBride,* 94 F.3d 1062, 1065 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). Thus, following *Evans* and *Sweeney,* this court shall apply the amended standards of the AEDPA on Rowold's challenge to his prison disciplinary conviction.

## E. RELIGIOUS FREEDOM RESTORATION ACT

Rowold argues Respondent violated the Religious Freedom Restoration Act of 1993 (RFRA) by imposing sanctions which were a substantial burden on his exercise of religion. Congress enacted the RFRA in response to the Supreme Court's holding in *Employment Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* the Court rejected a balancing test which looked to whether the law substantially burdened the religious practice and if so, whether the burden was justified by a compelling government interest. (citing *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)). The Act, 42 U.S.C. § 2000bb–1, prohibits the government from "substantially burden[ing]" a person's exercise of religion unless the government can prove the burden "is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that … interest."[2]

Recently, the Supreme Court held that RFRA exceeded Congress' § 5 under the Fourteenth Amendment enforcement power, and was therefore unconstitutional. *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The Court found "[r]equiring a State to demonstrate a compelling interest and show that it has adopted the least restrictive means of achieving that interest is the most demanding test known to constitutional law." *Id.* at ——, 117 S.Ct. at 2171. The Court found that RFRA would lead to inconsistent and unreliable results. "When the exercise of religion has been burdened in an incidental way by a

law of general application, it does not follow that the persons affected have been burdened any more than other citizens, let alone burdened because of their religious beliefs." *Id.* The Court definitively stated "RFRA was designed to control cases and controversies, but as the provisions of the federal statute here invoked are beyond congressional authority, it is this Court's precedent, not RFRA, which must control." *Id.* at ——, 117 S.Ct. at 2172.

Because of the Court's decision in *Flores,* this court must follow that decision and decline to decide the case at bar on the merits of the Religious Freedom Restoration Act claims.

## F. LEGITIMATE PENOLOGICAL INTEREST

Rowold's final argument is that the extra work duty was not reasonably related to a legitimate penological interest. The Supreme Court in *Turner, supra,* defined legitimate penological interest by setting forth five factors. First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it." 482 U.S. at 89, 107 S.Ct. at 2262. In ascertaining the validity of a regulation, the court must look to whether it seeks to obtain an arbitrary and irrational goal or meet a legitimate and neutral objective. *Id.* at 90, 107 S.Ct. at 2262. Second, the court must determine whether an "alternative means of exercising the rights that remain open to prison inmates" exists. *Id.* The *Turner* Court advised lower courts to remain aware of the "measure of judicial deference" that prison officials are afforded. *Id.* Next, the court must consider the "impact the accommodation of the asserted constitutional right will have on guards and other inmates." *Id.* When considering this factor courts should be mindful of the "ripple effect" that exists in the closed prison environment. Finally, it is necessary to determine if "the absence of ready alternatives" exists.

**2.** Aside from and in addition to the Religious Freedom Restoration Act there are sensitive concerns under the Free Exercise Clause of the First Amendment in special regard to the rights of prisoners. *See Reed v. Faulkner,* 842 F.2d 960 (7th Cir.1988) (is an object lesson of such), *and compare Childs v. Duckworth,* 509 F.Supp. 1254 (N.D.Ind.1981), *aff'd,* 705 F.2d 915 (7th Cir. 1983); and *Young v. Lane,* 922 F.2d 370 (7th Cir.1991).

 

*Id.* This final standard is not a "least restrictive means test." "If an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91, 107 S.Ct. at 2262.

In applying the first *Turner* factor, this court concludes a valid rational connection exists which is neutral in its application. It is neither arbitrary nor irrational to require inmates to perform additional work duty in response to various violations they have committed while incarcerated. This court is mindful of the Supreme Court's admonition, in the second factor, to give deference to prison officials while determining the validity of regulations. This court will not substitute its judgment for that of prison officials.

It is imperative to avoid opening the floodgates to litigation whenever possible. If this court were to hold Rowold's right to assert his religious beliefs outweighed the rights of the penal system to maintain order and balance it is quite possible other prisoners would convert to Judaism or the Adventist following to avoid Sabbath work duty. This would have a significant effect on other inmates and guards alike. Here, the final factor of the *Turner* test is the most influential. Although, as Rowold argues, there were other inmates not of the Jewish or Seventh Day Adventist faiths who could have been used for the extra work duty on this particular day, it is not necessary for prison officials to implement other alternatives to prove the regulation was the least restrictive means available. This court does not conceive the values in either *Reed* or *Childs* have been here violated.

## IV. CONCLUSION

The court for the foregoing reasons, holds that Rowold's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted under the First Amendment to the United States Constitution. Any claims that this Petitioner may advance under 42 U.S.C. § 1983 understanding *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), are not specifically foreclosed here. Therefore, this petition is hereby **DENIED** and this case is now **DISMISSED. IT IS SO ORDERED.**